EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* CARLOS RENÉ ALVAREZ, acusado y apelante.

*Número:* CR-76-32      *Resuelto:* 14 de diciembre de 1976

*Héctor M. Cruz Ramírez* y *Wilson Cruz Ramírez,* abogados del apelante; *Roberto Armstrong, Jr., Procurador General Interino* y *Ricardo Alegría Pons, Procurador General Auxiliar,* abogados de El Pueblo.

PER CURIAM: Se acusó al apelante de infringir el Art. 168 del nuevo Código Penal, 33 L.P.R.A. sec. 4274, por haber recibido en su establecimiento, a sabiendas de que fueron apropiadas ilegalmente, prendas valoradas en exceso de ochocientos dólares. Celebrado el juicio ante jurado, se le halló culpable y se le condenó a cinco meses de reclusión. Se apela ante nos a base de que el veredicto no está sostenido por la prueba; que no es válida la identificación de las prendas; y que la sentencia es nula porque al apelante no se le hicieron las advertencias constitucionales correspondientes en cuanto a su derecho a no declarar, a tener asistencia de abogado y al hecho de que lo que declarase podría usarse en su contra.

La prueba de cargo—el acusado invocó su derecho a no declarar—sostiene el fallo de culpabilidad. Un menor, hermano de la víctima del hurto, vio a dos mozalbetes adueñándose de prendas de su hermana en su apartamento en Mayagüez (Exposición Narrativa de la Prueba, pág. 1). La víctima constató al regresar a su hogar la desaparición de un anillo, varias sortijas, un reloj y otras prendas, algunas pertenecientes a su señora madre. Notificó a la policía y luego comenzó a recorrer distintas joyerías de Mayagüez, en la esperanza de reconocer las prendas hurtadas. Un día, en la joyería del apelante, divisó en la vitrina una sortija de su mamá, una sortija de oro amarillo en forma de flor, con rubíes y una perla cultivada. Entró a la joyería y solicitó

ver portanillos, expresando que pensaba casarse pronto. Allí reconoció otras prendas hurtadas. Se despidió, diciendo que traería su novio. Su anillo le había costado a su novio $425.00 y se le vendía por $200.00. Acto seguido le dio parte a la detective de lo sucedido y pidió que la acompañaran a la joyería (E.N.P. págs. 2–3). Visitó de nuevo la joyería con un acompañante suplido por la policía, comenzó a ver las prendas y poco después llegaron dos detectives. Se le dijo al apelante que esas joyas eran bienes hurtados. El contestó que si era así que se las llevasen, que no quería cuenta con cosas robadas. La policía ocupó las prendas y, sin que mediase pregunta alguna, el apelante explicó que un árabe le había vendido las prendas, pero que no lo conocía ni sabía dónde se le podía conseguir. El apelante no tenía factura o recibo de la compra de las prendas.

Conforme el testimonio de la perjudicada, el apelante la llamó luego por teléfono y le dijo que era cristiano, que no había hecho eso de mala fe, que no siguiera adelante con el caso (E.N.P. pág. 3). Un sargento de la policía corroboró básicamente la información que suplió la perjudicada y lo sucedido en la joyería (E.N.P. págs. 3–4).

En *Pueblo* v. *Batista Maldonado*, 100 D.P.R. 936, 938–939 (1972), señalamos que "la mera posesión de los objetos hurtados no es por sí sola suficiente para sostener una convicción por el delito de hurto pero que en ausencia de prueba directa sobre el acto de la apropiación ilegal, la posesión por el acusado de la propiedad recientemente hurtada unida a otras circunstancias justifica que se someta la cuestión al jurado para la determinación definitiva sobre la responsabilidad criminal." El resumen de la prueba demuestra que en el caso de autos mediaron circunstancias que justificaron la sumisión al jurado de la cuestión central relativa a si el apelante sabía que las prendas eran hurtadas. Están los factores del alegado costo menor; la vaguedad sobre el modo en que el apelante adquiere la posesión de las prendas; su

llamada telefónica a la perjudicada. No cometió error el tribunal de instancia al permitir que el jurado determinase si de tales hechos se deriva la requerida intención criminal.

■ El segundo planteamiento de error es inmeritorio. Argumenta el apelante que las prendas no tenían seña alguna de identificación; que la perjudicada las identificó diciendo sencillamente que las conocía y que tal modo de identificación es tan poco confiable que es inadmisible. No cita el apelante, ni hemos hallado nosotros, autoridad alguna que apoye tal contención. El planteamiento del apelante representa en efecto un ataque a la credibilidad del testimonio de la perjudicada, cuestión que se sometió correctamente al jurado para su dilucidación.

■ El último señalamiento de error requiere que nos refiramos brevemente a la regla de *Miranda* v. *Arizona,* 384 U.S. 436 (1966). *Miranda* impide que el Ministerio Público haga uso de declaraciones de un acusado que resulten de su interrogatorio bajo custodia, a menos que demuestre que se le han hecho al acusado las advertencias necesarias para salvaguardar su derecho a no incriminarse. La definición de "custodia" en estas circunstancias es vital. *Miranda* expresa tan solo que un interrogatorio bajo custodia es aquel iniciado por la policía después que se haya puesto al acusado bajo custodia o de habérsele privado de su libertad de acción en modo significativo. 384 U.S. 436, 444. A partir de *Miranda,* surgen diversas escuelas para definir el término "custodia". Smith, J. V., *The Threshold Question in Applying Miranda: What Constitutes Custodial Interrogation,* 25 S.C. L.Q. 699 (1974). Ha habido esfuerzos también para fundir las doctrinas de *Miranda* y *Escobedo* v. *Illinois,* 378 U.S. 478 (1964). Graham, *What is "Custodial Interrogation?": California's Anticipating Application of Miranda v. Arizona,* 14 U.C.L.A. L. Rev. 59 (1967).

■ No es necesario en este caso, sin embargo, evaluar en detalle los diversos criterios utilizados para la aplicación de

*Miranda,* como tampoco pasar juicio sobre la erosión que ha sufrido su norma en otras jurisdicciones. Note, *United States v. Crocker: Setting the Stage for Miranda's Last Act,* 47 U. Colo. L. Rev. 279 (1976); 1976 Annual Survey of American Law 165 *et seq.* Según señaló la propia corte en *Miranda:* "Las declaraciones voluntarias de cualquier género no quedan excluidas por la Enmienda Quinta y su admisibilidad no queda afectada por nuestro fallo de hoy." 384 U.S. 436, 478. Al mismo efecto: *United States v. Littlejohn,* 441 F.2d 26 (10th Cir. 1971); *Sellers v. Smith,* 412 F.2d 1002 (5th Cir. 1969); *cf. United States v. Phelps,* 443 F.2d 246 (5th Cir. 1971).* En el caso de autos no se arrestó al apelante ni se le privó de su libertad en modo significativo antes o inmediatamente después de sus expresiones en la joyería. No efectuó el apelante sus declaraciones en un clima de coacción. Sus afirmaciones fueron voluntarias. En adición, si es que duda pudiese caber al respecto sobre lo dicho en la joyería, no puede cuestionarse la voluntariedad de su llamada telefónica a la perjudicada, ni sobre el hecho irrefutado de que se estaba vendiendo un objeto de valor por menos de la mitad de su precio original.

*Se confirmará la sentencia apelada.*

---

(*) Compárense: *Pueblo v. González Torres,* 95 D.P.R. 155 (1967); *Pueblo v. Negrón Vélez,* 96 D.P.R. 419, 436 (1968); *Pueblo v. Tribunal Superior,* 97 D.P.R. 199 (1969); y *Pueblo v. Colón Mejías,* 99 D.P.R. 14 (1970).