UNITED STATES of America, Appellee,

v.

Francisco FLORES PEREZ,
Defendant, Appellant.

No. 86–1381.

United States Court of Appeals,
First Circuit.

Heard May 6, 1988.
Decided June 3, 1988.

Robert H. Astor, Springfield, by Appointment of the Court, for defendant, appellant.

Jorge E. Vega–Pacheco, Asst. U.S. Atty., San Juan, P.R., with whom Daniel F. Lopez–Romo, U.S. Atty., Hato Rey, P.R., and Luis A. Plaza, Asst. U.S. Atty., Crim. Div., were on brief for appellee.

Before CAMPBELL, Chief Judge, BOWNES and BREYER, Circuit Judges.

LEVIN H. CAMPBELL, Chief Judge.

Defendant-appellant Francisco Flores Perez ("Flores") appeals from his conviction for aiding and abetting Lorenzo Hernandez Lopez in violating federal firearms

laws. 18 U.S.C. §§ 2(a), 922(k), 924 (1982 & Supp. IV 1986). Flores alleges three grounds for overturning his conviction: 1) that crucial evidence was obtained in violation of the Fourth Amendment; 2) that the evidence was insufficient to support the conviction; and 3) that the prosecution presented "other bad act" testimony in violation of Fed.R.Evid. 404(b).

## I.

Although some facts are hotly disputed, the parties agree on the basic outline of the alleged crime and the circumstances of Flores's arrest. On the morning of January 23, 1985, four undercover Puerto Rico police officers were conducting surveillance near Mr. Dominicci's residence in Ponce, Puerto Rico. The officers were seated in an unmarked Datsun. Just after the officers arrived, they observed two men exit a yellow car parked in front of the Dominicci residence and walk inside the home. A few minutes later, Lorenzo Hernandez Lopez ("Hernandez") was seen walking toward the Dominicci residence. He stopped in front and called inside. The two men (originally from the yellow car) came out of the Dominicci residence and greeted Hernandez. Conversing, the three men crossed the street and stopped. After a couple of minutes, defendant Flores, driving his brown van, arrived on the scene. The officers observed Flores's van drive past their car toward the Dominicci residence. Hernandez made a hand signal to Flores, and Flores pulled the van up onto the sidewalk and stopped. The three men immediately recrossed the street and walked towards the yellow car. One of the men opened the trunk of the yellow car, pulled out a briefcase, and handed it to Hernandez. Hernandez said farewell, walked over to the passenger side of Flores's van, and climbed inside.

The police believed that the briefcase contained contraband, and were determined not to allow the van to get away. As soon as Hernandez entered the van, the police started their car and headed towards it. Meanwhile, the van was moving from the sidewalk onto the street. The Datsun pulled parallel to the van, and then veered to its right in an attempt to force the van to stop. Flores evaded the Datsun, accelerated quickly, and attempted to escape. With the Datsun in pursuit, Flores drove down the street, turned right, and entered the Ariste de Chavier Housing Project. In the middle of the project, the van slowed, and Hernandez, with the briefcase in his hand, leaped out. Hernandez stumbled, and the briefcase hit the ground and sprung open, revealing four pistols. The Datsun stopped in the same location, and all but one officer left the car to capture Hernandez. The remaining officer remained in the Datsun and pursued the van. After a high speed chase, Flores stopped the van and got out. He was then arrested by the pursuing officer.

Further investigation by federal and state authorities revealed the following: The two men from the yellow car had just arrived in Puerto Rico on a flight from Louisiana; they had brought with them the briefcase containing the four pistols. The serial numbers on the pistols had been obliterated, and an engraving tool suited to that task was in the men's luggage. Under 18 U.S.C. § 922(k), it is a crime

> for any person knowingly to transport, ship, or receive, in interstate or foreign commerce, any firearm which has had the importer's or manufacturer's serial number removed, obliterated, or altered.

As a result of this incident, the two men in the yellow car were convicted of violating federal firearms laws, *see United States v. Garcia*, 818 F.2d 136 (1st Cir. 1987), Flores and Hernandez were indicted, and Flores was tried in the instant case.

The government alleges that Flores was a willing aider and abettor of Hernandez, while Flores argues that the evidence is insufficient to prove that he was anything more than an unwitting participant who was caught in the wrong place at the wrong time. Flores testified at trial in his own defense. He stated that on the morning of January 23, he was on his way to visit his mother. As he drove down the street, he spotted Hernandez, who was a casual acquaintance. When Hernandez signalled, Flores, as an act of friendship, stopped the van so that he could give Her-

nandez a lift. As Flores drove the van off the curb into the street, the unmarked red Datsun suddenly appeared, and tried to cut him off. Flores instinctively accelerated, and continued to flee when occupants of the pursuing Datsun fired shots at him.[1] Sometime after Hernandez had jumped from the van, Flores began to realize that the Datsun might be a police car, so he ended his flight.

Flores's reason for fleeing when the police Datsun pulled alongside his van was a major issue at trial. Flores denied realizing that the Datsun was a police vehicle. Two police officers testified, however, that when they pulled parallel to the van, they sounded the Datsun's siren. They also testified that the window on the driver's side of the van was open, that Officer Campos Camacho, seated in the front passenger seat of the Datsun, waved his police credentials and told Flores to stop, and that Flores turned his head and looked towards Officer Campos.

Flores gave a different version of events. He testified that all of the van's windows were rolled up because he was using the van's air conditioning. Further, the van had tinted glass. When the Datsun appeared, Flores did look towards his left. Due to the difference in height between a van and a compact car, however, Flores mostly saw the roof of the Datsun, and could not see or hear any police officers.

## II.

### A. *Insufficient Evidence*

■ Flores claims that the evidence was insufficient for the jury to find, beyond a reasonable doubt, that he knowingly aided and abetted Hernandez in an illegal firearms transaction. We disagree. Taken in the light most favorable to the government, the evidence and reasonable inferences therefrom were sufficient to permit the jury to infer that Flores had knowingly agreed to participate in the unlawful firearms transaction. First, the jury could have inferred that Hernandez and the two men were expecting someone to come and pick up Hernandez. After crossing the street, they stopped until Flores arrived, whereupon they immediately recrossed the street and transferred the briefcase from the yellow car to Hernandez. Second, the jury could have found that Flores's stopping his van at Hernandez's hand signal is more consistent with a planned rendezvous than a chance meeting between casual acquaintances. Third, the jury could have found that Flores was well aware that the Datsun was a police car. If so, then Flores's flight from the Datsun implied that Flores knew he was involved in an illegal transaction. *See, e.g., United States v. Alvarez*, 626 F.2d 208, 210 (1st Cir.1980); *United States v. Petrozziello*, 548 F.2d 20, 24 (1st Cir.1977).

### B. *"Other Acts" Evidence*

Flores next contends that the district court committed reversible error by allowing into evidence a prior "bad act" in violation of Federal Rules of Evidence 404(b).[2] *See also* Rule 403. The challenged bad act was Flores's alleged possession on Septem-

1. Flores presented two other witnesses who testified that shots were fired from the Datsun. Both police officers who testified at trial denied that shots were fired.

2. Fed.Rules of Evid. 404(b) provides:
   **Other crimes, wrongs, or acts.** Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.
   Prior to trial, the government filed a Notice of Intention to introduce evidence of the prior bad act. The government intended to have police officer Gracian Feliciano Rodriguez ("Feliciano") testify about a firearms incident occurring some months before the present one, on September 22, 1984, and to place copies of the state charges into evidence. Flores responded with a motion in limine to exclude the evidence. The record on appeal does not contain any mention of the district court's ruling on Flores's motion in limine to exclude the Rule 404(b) evidence. However, both parties state that the district court ruled that the evidence was admissible, and we assume that it did so.
   At trial, Officer Feliciano testified about the prior bad act, and that Flores had been charged with the state firearms offenses, but the court sustained Flores's objections to admitting into evidence copies of the state charges. None-

ber 22, 1984, of a handgun and ammunition in purported violation of Puerto Rico law. State charges for this were still pending at the time of Flores's present trial.

The admissibility of "other bad acts" evidence is determined by a two-step procedure:

> As a first step, the judge determines whether the evidence has some "special" probative value that would show intent, preparation, knowledge, or absence of mistake. As a second step, the judge balances the evidence's probative value against the prejudice to the defendant.

*United States v. Scelzo*, 810 F.2d 2, 4 (1st Cir.1987) (citations omitted). Such evidentiary rulings are committed to the discretion of the district court, and will only be reversed if the district court abuses that discretion. *United States v. Eatherton*, 519 F.2d 603, 611 (1st Cir.), *cert. denied*, 423 U.S. 987, 96 S.Ct. 396, 46 L.Ed.2d 304 (1975). Further, where, as here, the other bad act evidence is introduced to show knowledge, motive, or intent, the Rule 404(b) exceptions to the prohibition against character evidence have been construed broadly. *See, e.g., United States v. Cintolo*, 818 F.2d 980, 1000 (1st Cir.), *cert. denied*, —— U.S. ——, 108 S.Ct. 259, 98 L.Ed.2d 216 (1987).

■ The evidence presented of the prior act showed that, as of September 22, 1984,[3] Flores's wife had been "feuding" with Flores's next-door neighbor. The neighbor called the police, claiming that Flores had shot at the neighbor's house. Two policemen arrived, and as they were discussing the incident with the neighbor, the neighbor noticed Flores and his wife drive by in a car. (Flores was driving; his wife was in the front passenger seat.) The police climbed in their marked police vehicle, turned on the flasher, and began to pursue. After the police began to follow, Flores drove two or three blocks before stopping. Although it was dark, the police were able to observe that two objects were thrown from the passenger's window onto the street. After the officers arrested Flores and his wife, one officer returned to where he thought the objects were thrown from the car, and found a pistol and a brown bag containing 11 bullets.[4]

As a result of this episode, Flores was charged with three violations of Puerto Rico law: possession of a firearm without a license, P.R.Laws Ann. tit. 25, § 416 (1980); carrying, without a license, a loaded weapon or a weapon accompanied by ammunition, P.R.Laws Ann. tit. 25, § 418 (1980); and receiving property (presumably the pistol thrown from the car) unlawfully appropriated, P.R.Laws Ann. tit. 33, § 4274 (Supp.1986). Aside from a police officer's testimony that Flores was charged with these crimes, the record contains no evidence with regard to whether Flores had or did not have a license for the pistol, or to whether the pistol had or had not been "unlawfully appropriated." As already observed, these state charges were still unresolved at the time Flores was tried below for his role in the January 23, 1985, firearms transaction.

The government insists that evidence of Flores's involvement in the state firearms

---

theless, the government writes in its brief that the copies of the state charges *were* admitted into evidence. The docket sheet, however, indicates that the copies of the state charges were *not* admitted into evidence.

3. Some of these facts are taken from an attorney's affidavit attached to the defendant's motion in limine to exclude the evidence of the other bad acts. The attorney's affidavit was based on the state complaint and other supporting documents filed in state court. Although not all of these facts were presented to the jury, admissibility determinations are not bound by the rules of evidence. Fed.R.Evid. 104(a). Accordingly, we take these matters into account in our review of the district court's rulings.

4. At trial Officer Feliciano testified that the two objects thrown from the car were a bag and a package and that the bag contained a gun and ammunition. This version may be less reliable than that in the attorney's affidavit, however, as Feliciano himself did not return to pick up the items thrown from the car. In addition, Feliciano seemed to have forgotten important details. For example, he at first testified that the items were thrown from the driver's side of the car. On cross-examination, he was shown a police report, and he then recalled that the items were thrown from the passenger's side.

crimes allegedly committed on September 22, 1984, was admissible because the former tended to undermine his innocent explanation of how he came to pick up Hernandez and the briefcase concealing the four illicit firearms. *See, e.g., United States v. Molinares–Charris,* 822 F.2d 1213, 1220–21 (1st Cir.1987) (past drug smuggling admissible to show knowledge and intent of persons apprehended while on boat carrying a large amount of marijuana); *United States v. Scelzo,* 810 F.2d at 3–5 (prior participation in another credit card fraud admissible to show knowledge and intent to commit credit card fraud); *United States v. Francesco,* 725 F.2d 817, 822 (1st Cir.1984) (prior conviction for cocaine trafficking admissible to show knowledge and intent to engage in cocaine trafficking). *See generally* J. Weinstein & M. Berger, *Weinstein's Evidence* ¶ 404[12] (1985) (listing cases where prior similar crimes are used to prove intent).

▪ We cannot accept the government's position in the facts and circumstances of this case. Apart from what the September 22 incident revealed about Flores's criminal character, these events had little "special" relationship to establish Flores's knowledge and intent in the instant case. Indeed, there is a total absence of evidence that the pistol tossed from the car in which Flores was riding on that date was even 1) unlicensed, or 2) stolen. For Flores or his wife to have discarded a *legally* possessed firearm (in order to get rid of evidence that he or she had been shooting at a neighbor's house) had no "special" probative force to prove that Flores was knowledgeable about gun trafficking. Rather its principal tendency would simply be the forbidden one of showing Flores's criminal character.

We now discuss these points in greater detail:

#### (1) *Lack of Proof that the Pistol Discarded on the Prior Occasion Was Unlicensed or Stolen*

In *Huddleston v. United States,* —— U.S. ——, ——, 108 S.Ct. 1496, 1497, 99 L.

Ed.2d 771 (1988), the Supreme Court rejected any requirement that the district court itself make a preliminary finding that a prior bad act actually occurred. Instead, the Court ruled that

> [s]uch evidence should be admitted if there is sufficient evidence to support a finding by the jury that the defendant committed the similar act.

Here a police officer testified to the discarding of the pistol from a vehicle in which Flores and his wife were driving. This occurred while the police were in pursuit, following a complaint that Flores had shot at a neighbor's house. There was no evidence presented below that the pistol was unlicensed or had been stolen except as that might be inferred from the officer's testimony that Flores was subsequently *charged* with state offenses involving such elements.

As later discussed, we doubt if Flores's prior possession of even an unlicensed firearm would be material enough to knowledge and intent in the present federal crime to be admissible. A stronger case for admissibility would exist for evidence that he possessed a *stolen* weapon. *See infra.* The absence of proof of either factor was, in any case, fatal.

▪ That Flores had been charged in the Puerto Rico courts with possessing an unlicensed weapon and receiving a stolen one was not competent evidence of these matters. *See United States v. Cox,* 536 F.2d 65, 72 (5th Cir.1976) ("It is hornbook law that indictments cannot be considered as evidence...."); 3A J. Wigmore, *Evidence in Trials at Common Law* § 980a (Chadbourn rev. 1970). The jury should never have been told that Flores was charged with these offenses nor, more importantly, can we now rely upon evidence of these charges as "sufficient evidence to support a finding by the jury that the defendant *committed a similar* act." *Huddleston v. United States,* —— U.S. at ——, 108 S.Ct. at 1499 (emphasis supplied).[5]

---

**5.** To establish that the gun thrown from Flores's car was "unlawfully appropriated," P.R.Laws Ann. tit. 33, § 4274, the Commonwealth was required to prove that 1) the property was unlawfully appropriated, and 2) the defendant knew the property was unlawfully appropriated.

That Flores or his wife threw the weapon from the car would not, by itself, on the facts presented, support an inference that the pistol was unlicensed or that Flores had received a stolen weapon. The police had been called to investigate a charge that Flores had just shot at a neighbor's house. This suggests ample reason for Flores to have tossed away the incriminating weapon after the police began to chase him. If the prosecution wished the jury to infer that Flores had committed a firearms offense (as well as simply shooting at someone's house), it should have introduced evidence showing that the discarded gun was unlicensed or had been stolen. No such evidence was presented. In its absence, we do not see how the earlier incident possessed sufficient relevance to the present charge of knowingly receiving altered firearms to tend to prove intent or knowledge in the latter.

To be sure, the prior incident revealed that Flores (or his wife) had then possessed a gun and bullets. He was also shown to have been anxious to get rid of the gun, leading to an inference that he may have used it illegally, perhaps by shooting at someone. But the clear thrust of evidence of this kind is that Flores had general criminal proclivities, not that he had special knowledge about gun trafficking. Proving present guilt by inference from bad character and the likelihood a defendant acted in conformity therewith is prohibited. Fed.R. Evid. 404(a), (b). We recognize, of course, that prior possession of a gun, any gun, whether or not legally, shows that Flores was somewhat familiar with guns. But this fact alone would not be sufficiently probative of relevant intent or knowledge to outweigh the danger of unfair prejudice from permitting the jury to deduce present guilt from evidence of bad character. *See* Fed.R.Evid. 403.[6]

We conclude that the district court erred in allowing the prior bad act evidence in its present form, *at least* without proof that the gun in question on September 22, 1984, was unlicensed or stolen.

### (2) *Relevance of Earlier Crime to Intent*

Even if there had been evidence to establish that the pistol discarded on September 22, 1984, was an unlicensed one or had been stolen, it is by no means clear that the events at that time were sufficiently material to the presently charged offense to show knowledge or intent as to the latter. The instant crime is to aid or abet in the knowing receipt of guns with obliterated serial numbers. That crime is especially serious because the erasure of serial numbers strongly suggests the firearms will be used for illegal ends. That Flores pos-

---

*People v. Alvarez,* 105 D.P.R. 475 (Official English Translation 550) (1976). In this case, there was no evidence that 1) the gun was stolen, or 2) (assuming the gun was stolen) that Flores had any knowledge of that fact.

As for the unlicensed status of the handgun, an argument could be made under older Puerto Rico case law that the mere allegation that a gun is unlicensed raises a "presumption of illegal bearing" which the defendant must overcome by producing his license. *See, e.g., People v. Oquendo,* 79 P.R.R. 511, 515 (1956) (citing *People v. Segarra,* 77 P.R.R. 696 (1954)). But we question that the Puerto Rico courts would today still employ the presumption. In *People v. Del Rio,* 113 D.P.R. 684 (Official English Translation 886) (1982), the Puerto Rico Supreme Court expressed doubts about the presumption's legality.

The doctrine has been frequently attacked on the grounds that it could be in conflict with the presumption of innocence which accompanies every defendant during the entire pro-

ceeding, and with the constitutional right of every defendant to present or not to present evidence, and to testify or remain silent during trial, question [sic] which, however, we need not consider or discuss in the instant case.

Official English Translation at 892. *See also People v. Gonzalez Beniquez,* 111 D.P.R. 167 (Official English Translation 223) (1981) (overturning a conviction under the Puerto Rico weapons law because the jury may have thought that a statutory presumption was mandatory, rather than permissive).

6. This is not a case where evidence of Flores's past familiarity with the use of firearms would be relevant to disprove a claimed ignorance of criminal activity, as where a person present at the weighing of a drug claims he did not realize what was going on. There is no evidence Flores was presented with weapons paraphernalia or other clues which would have tipped off a knowledgeable person that firearms were concealed in the briefcase.

sessed a single unlicensed firearm would not tend to show the special knowledge associated with trafficking in altered firearms. Under Puerto Rico law, one can be convicted of possessing an unlicensed weapon without proof of any specific intent, or knowledge, purely on the basis of negligence.[7] Possessing a *stolen* weapon comes closer to reflecting the kind of knowledge and intent relevant to the knowing receiving of multiple weapons with obliterated serial numbers, in violation of 18 U.S.C. § 922(k). Even so, admissibility of the prior act is in these circumstances a very close question which we need not now decide.

We note that this is not a case where there is an easily found logical link between the prior act (even assuming the gun was stolen) and the charged crime. To illustrate, we list a few of the types of cases where prior acts evidence has been properly received.

First, other crimes evidence has been permitted to show a conspiracy if the earlier crime involved the same participants as the charged crime. *See, e.g., United States v. Gonzalez–Sanchez*, 825 F.2d 572, 583 (1st Cir.), *cert. denied*, — U.S. —, 108 S.Ct. 510, 98 L.Ed.2d 508 (1987); *United States v. Andiarena*, 823 F.2d 673, 677–78 (1st Cir.1987); *United States v. Cintolo*, 818 F.2d at 1000. In this case, however, the prior bad act involved Flores and his wife, not Flores and Hernandez.

Second, if a defendant is caught in possession of illegal drugs, but disavows any knowledge of that fact, prior experience with drugs can be introduced to show that the defendant knows how drugs look, feel, smell, and weigh. *See, e.g., United States v. Simon*, 842 F.2d 552, 554 (1st Cir.1988); *United States v. Lau*, 828 F.2d 871, 874 (1st Cir.1987); *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir.1982). Similarly, if a defendant is caught with stolen goods,

but claims that he was unaware that the goods were stolen, prior acts of receiving or selling stolen goods can be introduced to show the defendant's knowledge. *See, e.g., Huddleston v. United States*, — U.S. at ——, 108 S.Ct at 1499–1500. Here, Flores never had possession of the four guns. The guns were in his van only for a short time, and during that time they were concealed in a briefcase. Whether or not Flores had prior experience with guns could do little to help the jury decide whether Flores knew the briefcase contained guns.

Third, other bad acts that are interrelated to the crime charged can be introduced to show the context of the alleged crime. *See, e.g., United States v. Currier*, 821 F.2d 52, 53 (1st Cir.1987); *United States v. Cepeda–Penes*, 577 F.2d 754, 760 (1st Cir. 1978). In this case, the prior bad act is unrelated to the charged crime.

Fourth, in prosecution for trafficking in an addictive drug, a separate instance of possession can be probative of a defendant's motive to get involved in trafficking in order to support his habit. *United States v. Masse*, 816 F.2d 805, 813 (1st Cir.1987); *United States v. Kadouh*, 768 F.2d 20, 21 (1st Cir.1985). Unlike drugs, however, illegal guns are not a "habit" requiring a large stream of income. These cases do not support the argument that Flores's past possession of an illegal gun is probative of his motive.

In sum, even had the government established the illegal character of the gun discarded from Flores's car on September 22, 1984, the relationship between Flores's prior bad act and the charged crime is attenuated and of questionable relevance to Flores's intent to commit the charged crime. In any case, the government's failure to present additional evidence showing that Flores's discarded pistol was unli-

---

7. In *People v. Andriades*, 83 P.R.R. 818 (1961), a defendant who was charged under the Puerto Rico weapons law for carrying a gun without a license argued that the trial court erred by not instructing the jury on his claimed intoxication defense. The Supreme Court of Puerto Rico upheld the trial court, explaining that "the law

is violated by the mere carrying of weapons regardless of the purpose, motive, or intent." *Id.* at 831. *Cf. United States v. Freed*, 401 U.S. 601, 607–10, 91 S.Ct. 1112, 1117–19, 28 L.Ed.2d 356 (1971) (no requirement of specific intent in violations of National Firearms Act).

**8**

censed and, more especially, stolen, clearly rules the evidence out.

### 3. *Prejudice*

Having held it was error to allow the evidence, we must ask whether the error in so doing was harmless. We cannot say it was.

The case against Flores was by no means overwhelming. The guns were hidden in Hernandez's briefcase; there was no evidence Flores ever saw them; Flores took the stand to deny knowledge. He insisted his picking up of Hernandez was a fortuitous act of friendship. The jury might have entertained a reasonable doubt as to his guilt until confronted with the erroneously admitted evidence of the September 22, 1984, incident which clearly established Flores's criminal character. Guilt may have been improperly predicated on a finding of bad character and that Flores acted "in conformity therewith." Fed.R. Evid. 404(b).

We accordingly must vacate the conviction and remand for a new trial. In so doing, we urge the government and the district court, in future cases, to be careful as to the admission of evidence of this type. While admissible in some circumstances, it is by no means a routine exercise and should not be accepted unless the government articulates with suitable precision the "special" ground for doing so.

By way of guidance at a new trial, we add that we find no merit in Flores's contention that the evidence of his flight and the four pistols had to be suppressed because the police violated his Fourth Amendment rights by attempting to stop the van. Whether or not the police received an anonymous phone tip about the transaction, and whether or not an attempted stop even raises a Fourth Amendment issue,[8] the police action was a valid investigatory stop under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The officers were experienced narcotics agents, and they knew that Hernandez had several previous drug and weapons arrests and that Flores associated with a well-known drug dealer. When they saw the apparently prearranged pickup of the briefcase, they had "an articulable, reasonable suspicion of criminal activity." *United States v. Trullo*, 809 F.2d 108, 112 (1st Cir.), *cert. denied,* — U.S. —, 107 S.Ct. 3191, 96 L.Ed.2d 679 (1987).

*Vacated and remanded.*

---

8. In a pre-trial exclusion hearing, the magistrate ruled that an *attempted* stop does not result in a Fourth Amendment "seizure." We note that the Supreme Court may address this issue in *People v. Chesternut,* 157 Mich.App. 181, 403 N.W.2d 74 (1986), *cert. granted sub nom. Michigan v. Chesternut,* — U.S. —, 108 S.Ct. 226, 98 L.Ed.2d 185 (1987).