**UNITED STATES of America, Appellee,**

v.

**Victor ARIAS–MONTOYA,
Defendant, Appellant.**

**No. 91–1908.**

United States Court of Appeals,
First Circuit.

Heard April 6, 1992.

Decided June 23, 1992.

William J. Murphy, Providence, R.I., for defendant, appellant.

Zechariah Chafee, Asst. U.S. Atty., with whom Lincoln C. Almond, U.S. Atty., Providence, R.I., was on brief, for appellee.

Before CYR, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

Victor Arias–Montoya appeals his conviction for knowingly and intentionally possessing cocaine with intent to distribute in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). We find that the district court erred in admitting into evidence defendant's prior conviction for cocaine possession, but that the error was harmless. We therefore affirm.

I.

The facts as the jury could have found them are as follows.

On February 12, 1991 at about 11:30 p.m., two Rhode Island State Troopers manned a radar post monitoring the speed of traffic moving north on Route 95 in Richmond, Rhode Island. Their radar detected defendant's car moving at sixty-six miles per hour in a fifty mile per hour zone.

The troopers gave chase and stopped the car. Defendant was at the wheel. No one else was in the car.

In response to questioning by one of the troopers, defendant said that he had left his driver's license in his wallet at home. He wrote out his name, address and date of birth for the officers, giving a false name and a Virginia address. He informed the officers that the car belonged to a friend who lived in New York and provided them with car registration papers to this effect.

The police officers returned to their car and requested a radio check for a license in either Virginia or New York. They were told that there was none in either state under the name and date of birth given by defendant.

His suspicions aroused, one of the officers asked defendant if he could search the car. Defendant consented to the search both orally and in writing. In a cavity in the trunk of the car the officers found a kilogram of cocaine taped and wrapped in plastic bags. When the officers tried to arrest defendant, he attempted to escape and a scuffle ensued. Eventually defendant was handcuffed and arrested. Later, during an inventory search of defendant's car at the State Police barracks, one of the officers discovered an electronic beeper and a cellular telephone on the front seat and floor of the car.

Arias–Montoya's defense at trial was that he did not know the cocaine was in the trunk of the car. He claimed to have borrowed the car from a friend to drive from New York to Rhode Island to visit another friend for the day. Defendant could not give the last name of either the friend from whom he had borrowed the car or the one he intended to visit in Rhode Island.[1]

To rebut defendant's "no knowledge" defense, the prosecution introduced into evidence Arias–Montoya's 1983 conviction for cocaine possession.[2] The district court instructed the jury on the limited purpose for which this evidence could be considered. The jury returned a guilty verdict, and defendant was sentenced to a prison term of ten years.

## II.

Defendant claims that the district court committed error in admitting his prior conviction into evidence. After careful review of the record and the relevant precedent, we must agree.

It is well established that, under Fed. R.Evid. 404(b), evidence of prior bad acts is not admissible to show bad character or propensity to commit a crime, but may be admitted to prove, among other things, intent or knowledge.[3] *United States v. Simon*, 842 F.2d 552, 553 (1st Cir.1988). While logically relevant, "propensity" or "bad character" evidence is deemed to carry an unacceptable risk that the jury will convict the defendant for crimes other than those charged. *United States v. Moccia*, 681 F.2d 61, 63 (1st Cir.1982); *United States v. Rubio–Estrada*, 857 F.2d 845, 846 (1st Cir.1988). Such evidence therefore is inadmissible as a general rule. Where, however, it has some "special," *non*-character-based relevance—relating to intent or knowledge, for example—it may be admitted. *Moccia*, 681 F.2d at 63; *Rubio–Estrada*, 857 F.2d at 846–47.

This circuit has established a two-step test for determining the admissibility of bad act evidence. Such evidence first must overcome the "absolute bar" of Fed. R.Evid. 404(b), which excludes evidence of a past bad act where it is relevant *"only* because it shows bad character...."

---

**1.** At all times relevant to this appeal defendant was unemployed and an illegal alien.

**2.** Defendant was charged with possessing 400 grams of cocaine in Harris County, Texas on November 16, 1982. On motion by the state, the offense was reduced to possession of "not more than 28 grams" of cocaine. Defendant was convicted by a jury on September 14, 1983 and sentenced to serve two years in state prison.

**3.** Fed.R.Evid. 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident...."

*United States v. Ferrer–Cruz*, 899 F.2d 135, 137 (1st Cir.1990). Second, the evidence must survive scrutiny under Fed. R.Evid. 403, which bars evidence whose probative value is "substantially outweighed" by the risk of prejudice, confusion, or waste of time. *Id.* at 138.

Initially, the district court ruled the evidence inadmissible. Subsequently, however, it reversed itself, concluding that Arias–Montoya's past conviction for cocaine possession survived both of these tests. In so ruling, the court relied on what it considered controlling precedent from this circuit. We believe that the district court's first instinct was correct. Indeed, a contrary holding, we think, would drain the first sentence of Rule 404(b) of any force at all.

*No "Special" Relevance*

■ On this record, we fail to see how defendant's conviction for possessing twenty-eight grams of cocaine in Texas nearly ten years ago has any "special" relevance to his knowledge of the contents of the trunk of the car he was driving in February, 1991. To be sure, we have often deemed prior drug-related bad acts admissible to negate a "no knowledge" defense on a subsequent drug charge. As the following survey of our holdings makes clear, however, we have only done so where the evidence at issue supported at least one permissible (i.e., non-character-based) inference concerning the defendant's state of mind at the time of the charged offense.

In *United States v. Ferrer–Cruz*, 899 F.2d 135 (1st Cir.1990), for example, the defendant was observed driving a car to a corner where he met codefendants. Defendant exited the car and drove away in a pickup truck. Codefendants drove the car to a shopping center and consummated a drug sale to government agents. At the shopping center, the agents found two bags containing cocaine on the floor of the car next to the driver's seat where defendant had been sitting. Defendant and codefendants were charged with possessing (with intent to distribute) cocaine.

At trial defendant argued, among other things, that he was unaware of the cocaine when he turned the car over to codefendants. To negate this defense, the district court admitted into evidence defendant's two three-year-old convictions for possessing (with intent to distribute) marijuana and cocaine. This court sustained that decision. We reasoned that "[s]ince one who has previous experience with drugs is more likely.... to recognize (and hence to know) that the bags' contents were drugs than one without such experience, the inferences at issue do not involve character," *id.* at 138. "[T]he fact that a juror might also make other inferences that do involve character is beside the point as far as Rule 404's *absolute ban* is concerned." *Id.* The evidence will "survive[ ] an absolute ban as long as at least *one* permissible inference is possible." *Id.*

We applied the same reasoning in *United States v. Simon*, 842 F.2d 552 (1st Cir. 1988). There, federal customs officers discovered a box containing fifty-five pounds of marijuana on a plane bound from Jamaica to Antigua (via San Juan, Puerto Rico). On the outside of the box was an airline address sticker with defendant's name and Antigua address on it. Also written on the box was the name of a university professor. Neither defendant nor the professor was on the plane carrying the box. Defendant arrived in San Juan on the same flight on the next day and was arrested for various drug offenses by the customs agents. He admitted to having checked the box onto the plane in Jamaica the day before, but claimed that he did not know it contained marijuana. According to the defendant, he had been asked to check the fifty-five pound box as a favor to another passenger (the university professor) who told him the box contained books.

To negate defendant's claim of "no knowledge," the prosecution introduced evidence of his conviction, six years earlier, for cultivating marijuana with a friend in Antigua. This court sustained the admissibility of the conviction, finding that it supported at least one non-character or propensity-based inference: one with "a background involving marijuana cultivation," we suggested, "is not likely to believe that

a box containing marijuana feels like (or weighs about the same as) a comparatively sized box of books, and therefore would have been more suspicious of the ... [professor's] story (had there been such a ... [person])," *Simon*, 842 F.2d at 554.[4]

In *United States v. Moccia*, 681 F.2d 61 (1st Cir.1982), federal agents found illegal drugs, including marijuana, under a chicken coop in a barn and under some dog food in a freezer room of the farmhouse where defendant lived with his wife (the owner). At trial, defendant claimed not to have known of the drugs' presence. By introducing evidence of defendant's prior conviction for marijuana possession, the government sought to have the jury infer that "one who lives on a farm with marijuana in the freezer room and under the chicken coop and has a prior possession conviction is more likely to *know* about the presence of marijuana than one who lives on such a farm and does not have a past possession conviction." *Id.* at 63.

We affirmed the admission of this evidence, finding it possessed "special," non-character-based relevance. The jury might have concluded, we suggested, that those who use and keep marijuana nearby are more likely to talk freely about it in front of one with a prior conviction for possessing marijuana; that "a past possessor is more likely to spot marijuana under a chicken coop;" and that "a past possessor is less likely to throw away marijuana if he comes across it," *id.* These inferences support a conclusion of knowledge, we found, and "[n]one ... depends entirely upon the 'bad character/propensity' chain of reasoning." *Id.* They thus "escape the absolute bar of [Rule 404(b)'s] first sentence." *Id.*

The same cannot be said of the inference relied upon in this case. After quoting extensively from *Moccia*, the court attempted to articulate a permissible basis

for admitting Arias–Montoya's past conviction into evidence: "The question is ... [whether] one can infer that a defendant who has a past conviction of drug related crime as in this case is more likely to have cocaine in a package form in his automobile than those—more likely to have cocaine in that package form in his automobile? It's a close question." This formulation strikes us as wholly propensity-based. It asks, in essence, whether someone having possessed illegal drugs in the past would be more likely to possess with the intent to distribute them at a later time than someone without such a record.

Moreover, the trial court's inquiry seems irrelevant to any fact in issue at trial. Arias–Montoya did not deny that "cocaine in a package form" was in the trunk of the car he was driving. Rather, he claimed not to know it. Under these circumstances, the relevant test would appear to be whether someone with a past conviction for possessing twenty-eight grams of cocaine is more likely to know that there is a kilogram of cocaine in the trunk of the borrowed car he is driving than someone with no prior conviction.

The only connection we can draw between defendant's prior conviction and his state of mind at the time of the Rhode Island arrest is one based on character, i.e., defendant was more likely to know cocaine was in the car because he previously possessed cocaine. As we have explained, while bad character evidence may, indeed, be probative of a defendant's guilty knowledge, it must be suppressed unless it supports at least one non-character based inference.

No such inference is possible here. There was no evidence connecting defendant to the trunk of the car that would make the added fact of his past possession

**4.** The court also reasoned that Simon's prior conviction suggested he "used marijuana in Antigua and that those who use marijuana in Antigua are more likely to wish to bring marijuana to Antigua than those who do not," *Simon*, 842 F.2d at 553. Arguably, such reasoning, if viewed as an independent holding, would sweep broadly enough to support admissibility even though solely propensity-based. Had the evidence not supported additional, *permissible* bases for linking defendant's past bad acts to his knowledge of the contents of the box, we suspect we would not have affirmed without confronting the implications of such a holding. *See United States v. Mehrmanesh*, 689 F.2d 822, 831–32 (9th Cir.1982) (jury barred from inferring defendant's prior drug use made participation in drug importation more likely).

relevant to his knowledge on the instant charge. The record does not show, and the government did not argue, that defendant had ever opened or had reason to open the trunk of the car. None of his belongings was found there. And, though there were fingerprints on the cocaine package, defendant's were not among them.

Framing the 404(b) question in more ominous terms only underscores the point. We might ask, for example, whether an unemployed illegal alien, driving a borrowed car containing an electronic pager and cellular phone, who lies to police officers about his identity and has an eight year old conviction for possessing a small amount of cocaine, is more likely to know that a kilogram of cocaine is hidden in the trunk of the car than one with no such prior conviction. Although we might answer "yes," our response would be based solely on character inferences. A jury might well find the pager, the cellular phone, defendant's immigration and employment status, and his lying to the police probative of guilty knowledge. However, barring improper assumptions about his propensity to possess cocaine, the fact of the prior conviction does not make defendant's guilty knowledge *more* likely.

Had the car belonged to defendant, or were there evidence that he had used it for an extended period of time or on more than one occasion, we might be willing to presume he would have had reason to open its trunk and, so, to know that a kilogram of cocaine was hidden there. Arguably, the fact of defendant's prior possession coupled with his access to and use of the trunk would make it more likely for him to have come across the cocaine or recognized the cavity in the trunk as a good place to hide it. This would align the case more closely with *Ferrer–Cruz, Simon,* and *Moccia,* where the location of the drugs suggested a more substantial opportunity for discovery and, accordingly, a "tighter logical link between the extrinsic act and the charged crime," *United States v. Garcia–Rosa,* 876 F.2d 209, 221 (1st Cir.1989).[5]

Alternatively, we might be more prone to find "special relevance" had the circumstances of Arias–Montoya's prior drug conviction more closely mirrored those of the instant conviction;[6] had they been part of a common scheme or suggested course of continuous dealing;[7] had the fact of the earlier bad act been likely to provide con-

---

5. In *Ferrer–Cruz* the cocaine was found on the front floor of the car driven by defendant; in *Simon,* the defendant handled the box of marijuana (bearing his name and address); and in *Moccia,* the drugs were discovered in defendant's own home. *See* discussion at 710–11, *supra. See also United States v. Rubio–Estrada,* 857 F.2d 845, 847–48 (1st Cir.1988) (evidence of prior drug convictions supports inference that defendant knew scales, white powder, and cash ledger found in his home were used in drug distribution scheme).

6. *See,* for example, the following cases relied upon—inappositely, we think—by the government: *United States v. Rivera–Medina,* 845 F.2d 12, 16 (1st Cir.1988) (two instances of extortionate activity "striking[ly] similar[ ]" to offense of conviction and same coconspirators involved); *United States v. Gonzalez–Sanchez,* 825 F.2d 572, 581 (1st Cir.1987) (same participants in similar arson and fraud offenses); *United States v. Andiarena,* 823 F.2d 673, 677 (1st Cir.1987) (prior involvement with cocaine network admissible to prove participation in drug conspiracy with same individuals); *United States v. Crocker,* 788 F.2d 802, 804 (1st Cir.1986) (same participants and "sufficient[ly] similar" counterfeiting activities); *United States v. Wright–Barker,* 784 F.2d

161, 174–75 (3d Cir.1986) (similar drug smuggling schemes); *United States v. Jardan,* 552 F.2d 216, 218–19 (8th Cir.1977) (similar heroin distribution-related conduct). *See also United States v. Ingraham,* 832 F.2d 229, 231–34 (1st Cir.1987) (similar, peculiar offenses bearing defendant's "signature"); *United States v. Lau,* 828 F.2d 871, 873–74 (1st Cir.1987) (similar smuggling schemes involving same individuals); *United States v. Molinares Charris,* 822 F.2d 1213, 1219–21 & n. 6 (1st Cir.1987) (similar drug smuggling schemes); *United States v. Scelzo,* 810 F.2d 2, 4 (1st Cir.1987) (similar credit card fraud schemes); *United States v. Francesco,* 725 F.2d 817, 822 (1st Cir.1984) (prior cocaine sale relevant to intent to distribute cocaine isomer). *But see United States v. Renteria,* 625 F.2d 1279, 1281 (5th Cir.1980) (possession of two ounces of cocaine relevant to intent on distribution scheme involving five pounds of cocaine).

7. *United States v. Hopkinson,* 492 F.2d 1041, 1043 (1st Cir.1974) (prior armed robbery part of "continuing scheme" to finance drug importation so admissible to prove intent on importation charges); *United States v. Harrison,* 679 F.2d 942, 948 (D.C.Cir.1982) (evidence of past drug distribution admissible to show "course of dealing" and intent on instant drug charges).

text or complete the story of the one subsequently charged;[8] or, finally, had recently provided an additional basis for suspicion.[9] But the government argued none of these theories at trial, and none is supported by the record.

Instead, we find the facts of this case closer to those in *United States v. Lynn*, 856 F.2d 430 (1st Cir.1988). There the defendant was charged with conspiring to import (and to possess with intent to distribute) millions of dollars worth of marijuana and hashish and with importing marijuana. To establish the requisite state of mind, the government introduced evidence of the defendant's six-year old conviction for selling one hundred pounds of marijuana to an undercover agent. This court, subjecting the evidence to our two-step analysis, concluded that it supported no non-character based inference and, so, could not survive the rule's "absolute bar."

In so ruling, the panel relied upon the dissimilarity of the two offenses and the time lag between them. "The states of mind of someone who consummated a street sale to an undercover agent and one who participated in an international smuggling conspiracy are connected primarily by the fact that both engage in criminal enterprises involving drugs," *id.* at 436, we noted. "The ordinary inference here would seem very close to the inference ... [Rule 404(b)] was designed to avoid." *Id.* "Any non-propensity thread," we added, "is attenuated by the fact that the previous

crime took place six years before and involved different participants." *Id.*

We are likewise unable to discern a "non-propensity thread" linking defendant's possession of twenty-eight grams of cocaine in Texas in 1982 to his possession, in Rhode Island, some nine years later, of a kilogram of cocaine packaged for distribution. *See Garcia–Rosa*, 876 F.2d at 221 (relevance of defendant's use of small quantity of cocaine to his knowledge of purpose of loan made to codefendant—to finance smuggling of large amounts of cocaine and heroin—is "rank speculation once propensity is set aside"); *United States v. Mehrmanesh*, 689 F.2d 822, 831–32 (9th Cir.1982) (jury not entitled to infer that since defendant used drugs in the past he was likely to participate in their importation since evidence of past drug use "logically relate[s]" to no issue "other than ... general criminal propensity").

We previously have " 'urge[d] the government and the district court to be careful as to the admission of [extrinsic act evidence]' " under Rule 404(b). *Garcia–Rosa*, 876 F.2d at 221 (quoting *United States v. Flores Perez*, 849 F.2d 1, 8 (1st Cir.1988)). It " 'is by no means a routine exercise and should not be accepted unless the government articulates with suitable precision the "special" ground for doing so.' " *Id.* No permissible basis for introducing defendant's prior conviction was stated in this case, and our review of the

8. *See United States v. Currier*, 836 F.2d 11, 17 (1st Cir.1987) (taped statements of defendant concerning drug sale admissible to show context of drug distribution offense); *United States v. Currier*, 821 F.2d 52, 55 (1st Cir.1987) (similar); *United States v. Moreno Morales*, 815 F.2d 725, 740 (1st Cir.1987) (evidence of past crimes admissible to show "motive," "context," and "set up" of obstruction of justice charge); *United States v. Zeuli*, 725 F.2d 813, 816 (1st Cir.1984) (defendant's statements concerning one extortionate scheme admissible to show intent on similar scheme); *United States v. D'Alora*, 585 F.2d 16, 20 (1st Cir.1978) (money from previous drug sale found on defendant at time of arrest for drug-related offense admissible "to complete the story" of crime charged even though defendant not present at earlier sale).

9. *See Ferrer–Cruz*, 899 F.2d at 136–37 (bad acts separated by approximately three years); *Rivera–Medina*, 845 F.2d at 16 (noting "temporal proximity" of bad acts); *Lau*, 828 F.2d at 873 (bad acts separated by two and one half years); *Andiarena*, 823 F.2d at 675–77 (bad acts separated by approximately one year); *Scelzo*, 810 F.2d at 3 (bad acts separated by approximately three months); *United States v. Masse*, 816 F.2d 805, 813 (1st Cir.1987) (bad act committed while defendant on bail for charge of conviction); *Wright–Barker*, 784 F.2d at 174 (bad acts separated by six months to one year); *Renteria*, 625 F.2d at 1280–81 (cocaine discovered during search of defendant's room four months after indictment for drug smuggling); *United States v. Cepeda Penes*, 577 F.2d 754, 755 (1st Cir.1978) (bad acts separated by approximately nine days).

record and the relevant case law convinces us that none existed.[10]

*Harmless Error*

■ Our inquiry does not end here. Having concluded that defendant's prior conviction was admitted into evidence in error, we must decide whether the error was harmless. *Garcia–Rosa,* 876 F.2d at 222. A nonconstitutional evidentiary error under Rule 404(b) will be treated as harmless if it is "highly probable" that the error did not contribute to the verdict. *Id.* Bad character evidence of the sort admitted here is, we think, particularly likely to infect jury deliberations. Our review of the record persuades us that it in this case, however, it is "highly probable" that the admission of defendant's prior conviction did *not* contribute to the verdict against him.

This conclusion rests upon the strength of the government's case without the bad act evidence[11] and the fact that, aside from eliciting two lines of testimony about the 1983 conviction, the prosecutor made no further reference to it, either at trial or—and this we find particularly significant—in his closing. We also note that the district court properly cautioned the jury as to the limited weight to be given the prior conviction. These observations serve only to underscore the folly of bad act overkill.

*Affirmed.*

LEVIN H. CAMPBELL, Senior Circuit Judge (Concurring in the result).

I am not convinced that Fed.R.Evid. 404(b) barred the use of defendant's prior drug conviction to help establish knowledge just because propensity may have been a factor in inferring knowledge from the conviction.

Rule 404(b) disallows other-crimes evidence "to prove the character of a person in order to show action in conformity therewith." It *allows* such evidence, however, where probative inter alia of intent and knowledge. The present evidence was not offered to prove "action" of some type "in conformity therewith" but rather to prove intent and knowledge. If material to the latter, Rule 404(b) does not expressly prohibit the evidence merely because propensity is intertwined in the inference. It is a reasonable inference that one who was previously involved in drug dealing is more likely to know of the presence of drugs in the trunk of a car he is driving than one who was never so involved. Propensity is not the sole ingredient in this inference: familiarity and experience also play some part. A driver familiar with drugs is more likely to have recognized them should they have become visible at some point, such as when being loaded or when the trunk was opened. Most people would intuitively and logically reason that the possibility of innocent, unwitting possession was less in the case of a prior drug dealer. I do not believe that Rule 404(b) requires more in order to admit such evidence for the jury's consideration on the issue of intent and knowledge.

Hence, I would sustain the district court's admission of the prior drug conviction in these circumstances. It was not presented simply to show that commission of the charged offense was more likely, but rather to establish a particular element, intent and knowledge, as the Rule allows.

I see no meaningful factual difference between the circumstances of this case and

---

**10.** Because we find Montoya's prior conviction absolutely barred under the first step of our Rule 404(b) analysis, we do not reach the weighing of probative value and prejudicial effect required under the second step.

**11.** For the sake of convenience, we repeat the following facts established at trial: defendant lied to the Rhode Island police officers about his identity and birth date and about owning a driver's license; he claimed to be en route to Rhode Island to visit a friend for the night, but did not have a fresh set of clothes with him or any other personal effects; defendant was unable to provide the officers with the last name of the friend from whom he borrowed the car or the friend in Rhode Island; electronic pagers and cellular phones, such as were found near the front seat of the car defendant was driving are commonly used by drug dealers; defendant was unemployed and an illegal alien at the time of his arrest; and, finally, defendant attempted to escape from the officers when they tried to arrest him.

the ones in a case like *United States v. Moccia*, 681 F.2d 61 (1st Cir.1982). If there is any distinction, it lies in the greater sophistication of the post hoc rationalization in *Moccia*. Requiring the identification of at least one non-propensity based factor seems to me to do little more than create an incentive for a prosecutor or district judge to wax creative. I would rule here that the court did not err in allowing the prior offense to come in, knowledge being the key contested issue and the prior offense being reasonably probative of knowledge.