# United States Court of Appeals
## For the First Circuit

No. 07-2037

UNITED STATES OF AMERICA,

Appellee,

v.

PAUL HICKS,

Defendant, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. George A. O'Toole, Jr., U.S. District Judge]

Before

Lynch, Chief Judge,
Boudin and Lipez, Circuit Judges.

Jennifer Appleyard for appellant.
Kelly Lawrence, Assistant United States Attorney, with whom Michael J. Sullivan, United States Attorney, was on brief, for appellee.

August 11, 2009

**LIPEZ, Circuit Judge**.  After a jury trial, appellant Paul Hicks was convicted of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1) and of possession with intent to distribute crack and powder cocaine in violation of 21 U.S.C. § 841(a)(1).  He now appeals his conviction and sentence, requiring us to consider, among other things: whether a warrant for the search of his residence was supported by probable cause, whether the district court wrongfully denied appellant a Franks hearing to establish the veracity of the affidavit supporting the search warrant, and whether it was error to admit evidence of appellant's three prior drug convictions and other bad acts.  We reject appellant's claims of error and affirm.

**I.**

On January 20, 2005, agents of the Massachusetts State Police conducted a search of 15 Cabot Street in Brockton, Massachusetts pursuant to a "no-knock" search warrant issued earlier that day by a magistrate judge.  Massachusetts State Trooper James Long, who had been investigating appellant for weeks prior to the search, had executed an affidavit in support of the search warrant.

Long's affidavit stated that in December 2004, a confidential informant (CI) told him that he or she had been purchasing crack cocaine from a man known as "Pudgie."  The CI identified appellant as "Pudgie" in a photograph.  The affidavit

-2-

stated that the CI then participated in two controlled purchases of crack cocaine from appellant. The first transaction occurred "on or about" January 7, 2005 and the second "on or about" January 16, 2005. The affidavit explained that Long and other officers working the case were familiar with 15 Cabot Street from a previous narcotics investigation that had resulted in a search of the residence in January 2004. Officer Long averred in the affidavit that he believed that 15 Cabot Street was a location maintained by Hicks to prepare and distribute drugs.

The search was executed by a team of law enforcement officers. They found appellant in a bedroom, sitting on the edge of a bed and wearing nothing but a towel. He was the only adult in the house. In the drawer of a night stand and within arm's reach of where appellant had been sitting on the bed, the officers discovered a cellular telephone, a box of ammunition, a weapon holster, a men's watch, a key, and cash. They also found $2,090 in cash in the pocket of a leather jacket hanging in the closet. In the basement of the home, the officers found a digital scale, plastic baggies, baking soda, and, inside the hollow legs of a weight bench, 20.89 grams of crack cocaine and 125.51 grams of powder cocaine. In the kitchen, the officers found two more digital scales. Hicks was arrested and subsequently charged with being a felon in possession of ammunition and possession with intent to distribute crack and powder cocaine.

-3-

In March 2006, appellant moved in the district court to suppress the evidence seized during the search of 15 Cabot Street, claiming that the search warrant had been defective. Specifically, he argued that Trooper Long's affidavit did not establish probable cause to believe that evidence of narcotics dealing would be found at 15 Cabot Street. He claimed that Long's affidavit did not connect the CI's controlled purchases to 15 Cabot Street or show that appellant was himself connected to the residence.

The district court denied the motion to suppress, finding that the warrant affidavit had established probable cause. The court further found that even if there had not been probable cause to issue the warrant, the search was justified by the rule of United States v. Leon, 468 U.S. 897 (1984), because a reasonable officer could have thought that the affidavit had established probable cause.

Shortly before trial, appellant requested a hearing under Franks v. Delaware, 438 U.S. 154 (1978), (a "Franks hearing") to contest allegedly false statements in the search warrant affidavit. The district court denied the motion, finding that defendant had failed to make the preliminary showing necessary to warrant a Franks hearing.

A jury trial commenced on October 16, 2006 and lasted four days. The government presented the testimony of several law enforcement agents, including that of Trooper Long and others who

had participated in the investigation and eventual search of 15 Cabot Street. The government's final witness was Massachusetts State Police Officer Dean Levangie. Officer Levangie had participated in well over 300 crack cocaine investigations, an estimated seventy percent of which had occurred in Brockton, and testified as an expert in Brockton narcotics investigations.

After the district court's rejection of appellant's motion for judgment of acquittal pursuant to Federal Rule of Criminal Procedure 29, appellant presented the testimony of his mother, Rosemarie Hicks. The thrust of appellant's defense was that he lived with his parents and was only an occasional guest at 15 Cabot Street, that the drugs and paraphernalia found at the residence did not belong to him, and that he had no intent to exercise control over or distribute the drugs. At the close of evidence, he did not renew his Rule 29 motion. The jury found him guilty of all three counts. He was subsequently sentenced to 360 months of imprisonment for each of the three counts, to be served concurrently, followed by an eight-year term of supervised release. Appellant filed this timely appeal.

## II.

Appellant argues that the district court erroneously denied his motion to suppress the evidence seized in the search of 15 Cabot Street because the application in support of the search warrant failed to establish probable cause. We employ a two-tiered

standard of review to analyze such claims. Questions of law, including the question of whether a given set of facts gives rise to probable cause, are reviewed de novo, United States v. Woodbury, 511 F.3d 93, 96 (1st Cir. 2007), while factual findings are reviewed for clear error, United States v. Ribeiro, 397 F.3d 43, 48 (1st Cir. 2005). We "give significant deference to the magistrate judge's initial evaluation," and reverse "only if we see no 'substantial basis' for concluding that probable cause existed." Id. (quoting United States v. Feliz, 182 F.3d 82, 86 (1st Cir. 1999)).

A search warrant application must demonstrate probable cause to believe that: 1) a crime has been committed, and 2) "enumerated evidence of the offense will be found at the place to be searched -- the so-called 'nexus' element." Id. In considering whether a warrant affidavit establishes probable cause, a magistrate judge's task is "'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him . . . there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" Feliz, 182 F.3d at 86 (modification in original) (quoting Illinois v. Gates, 462 U.S. 213, 238 (1983)).

Appellant argues that the warrant affidavit was faulty because it failed to establish probable cause to believe that there was a nexus between the controlled purchases and 15 Cabot Street,

-6-

and that the evidence found at the home should therefore have been suppressed. We disagree. Trooper Long's warrant affidavit supplied a host of evidence to establish a "fair probability" that evidence of the narcotics trade would be found at 15 Cabot Street.

According to the affidavit, the CI gave Officer Long the crack cocaine after each controlled purchase and stated that it had been purchased from "Pudgie." The affidavit also described reliable information provided by the CI in earlier investigations and stated that Long knew "Pudgie" to be the nickname of appellant, who had several prior convictions for drug distribution offenses. The affidavit stated that officers followed a black Mazda van directly to 15 Cabot Street after its driver, reported by the CI to be "Pudgie," had used the van to deliver drugs during a controlled purchase. Officers later observed the van parked at the home during the late evening and early morning hours. Utilities at 15 Cabot Street were in appellant's name.

Trooper Long and other officers' knowledge and experience with 15 Cabot Street also linked appellant to the residence. The cell phone number dialed by the CI to reach "Pudgie" was registered to Edward Robinson, who had previously sold crack cocaine to law enforcement officers and had been arrested after an earlier investigation and search of 15 Cabot Street. Robinson was connected to appellant because during the earlier investigation he had used a vehicle registered to appellant's father to deliver drugs.

Furthermore, 15 Cabot Street was owned by Renee Yarrell, who was known by officers to be appellant's girlfriend and who had also sold drugs to undercover officers during the earlier investigation of 15 Cabot Street. Finally, the search warrant affidavit detailed Trooper Long's experience and training in narcotics investigations and his belief that 15 Cabot Street would contain evidence of appellant's preparation and distribution of narcotics.

In Ribeiro, 397 F.3d at 49-50, we found that the nexus element was satisfied when police officers conducting surveillance had seen the defendant leaving his home shortly before participating in a controlled narcotics purchase. Analyzing whether there was probable cause to establish the nexus requirement, we found it "compelling" that the defendant had been able to quickly respond to the undercover officer's requests for narcotics, which indicated that he kept a readily accessible supply of narcotics. Id. at 50. The nexus requirement was also supported by information obtained through surveillance and by the affiant officer's averment that he knew drug traffickers frequently stored drugs, cash, and other evidence of the drug trade in their homes. Id. at 51-52.

As in Ribeiro, the circumstances set forth in the affidavit -- which included the surveillance information, appellant's prior convictions and his connections to known drug dealers who operated out of 15 Cabot Street, and observations drawn from Trooper Long's training and experience -- established a fair

-8-

probability that appellant lived at 15 Cabot Street and that evidence of his drug dealing would be found there. Because we agree with the magistrate judge's determination that probable cause existed to search 15 Cabot Street, we affirm the district court's denial of appellant's motion to suppress the fruits of the search.[1]

## III.

Appellant argues that the district court erroneously denied his motion for a hearing to contest the veracity of statements made by Trooper Long in the warrant affidavit. Under Franks, 438 U.S. at 155, a defendant may request an evidentiary hearing to challenge the truthfulness of statements made by law enforcement agents in a search warrant affidavit. To obtain a Franks hearing, a defendant must make "a substantial preliminary showing" that: 1) the warrant affidavit contains a false statement made "knowingly and intentionally, or with reckless disregard for the truth," id. at 155-56, and 2) that "the allegedly false statement was necessary to the finding of probable cause." Id. at 156. We review the denial of a Franks hearing for clear error, United States v. Materas, 483 F.3d 27, 31 (1st Cir. 2007), which exists only when we are "'left with the definite and firm conviction

---

[1] The government argues, alternatively, that even if there were no probable cause for the search warrant, the evidence should not have been suppressed because of the good-faith exception of Leon, 468 U.S. at 913. Because we find that probable cause existed, we need not reach that alternative argument. See Ribeiro, 397 F.3d at 52 n.7.

that a mistake has been committed.'" United States v. Castillo, 287 F.3d 21, 25 (1st Cir. 2002) (quoting Anderson v. City of Bessemer, 470 U.S. 564, 573 (1985)).

In his motion for a Franks hearing, appellant challenged the veracity of Trooper Long's statement that the second controlled purchase happened "on or about" January 16, 2005. The district court denied the motion, finding that appellant had failed to make the necessary preliminary showing that the warrant contained a false statement made knowingly or with reckless disregard for the truth, and that, even if the challenged statement were false, it was not necessary to the finding of probable cause.

Appellant emphasizes on appeal, as he did in the district court, that the warrant states that the second controlled purchase occurred "on or about" January 16, 2005, while Trooper Long's work records show that he did not work January 15, 16, or 17. Appellant finds this possible discrepancy a sufficient showing that Trooper long knowingly included a falsehood in the affidavit.

As the government points out, the use of the phrase "on or about" when describing the time frame of a controlled drug purchase is a common police practice, used to protect the identity of a confidential informant. In United States v. Carty, 993 F.2d 1005, 1007 (1st Cir. 1992), we found that there was "nothing inherently contradictory or incredible" in the affiant's assertion that a controlled purchase had occurred "within the past few days"

of a warrant's execution, when the purchase had actually occurred the day of the execution. Id. at 1008. We remarked that the description's vagueness was due to the common police practice of not stating precisely the time of the buy in order to protect the confidentiality of the informant. Id.; see also United States v. Davis, 1996 WL 521202, at *6 (1st Cir. Sept. 16, 1996) ("While further detail about the controlled buy might have been desirable, the lack of specificity about the date of the buy or the quantity involved is not necessarily probative of falsity. The concern for keeping the buyer's identify confidential is a more likely explanation for the lack of those details."). As in Carty, there is "nothing inherently contradictory" in Trooper Long's description of the date of the controlled purchase: the fact that the buy may not have occurred within one day of the date referenced in Trooper Long's affidavit simply does not mean that it did not occur "about" that date.

Further, even if appellant could show that Trooper Long made a knowingly false statement, he has not shown that the challenged statement was necessary to the finding of probable cause. "[T]o determine the sufficiency of the affidavit, excluding the contested sentence, we look to 'whether the totality of the circumstances stated in the affidavit demonstrates probable cause to search either the premises or the person.'" United States v. Barnes, 492 F.3d 33, 37 (1st Cir. 2007) (quoting United States v.

<u>Khounsavanh</u>, 113 F.3d 279, 283 (1st Cir. 1997)). Even if the exact dates had not been set forth in the affidavit at all, the "totality of the circumstances" stated in the warrant affidavit was more than sufficient to establish probable cause to believe that evidence of a crime would be found at 15 Cabot Street.

Accordingly, we affirm the district court's denial of defendant's motion for a <u>Franks</u> hearing.

**IV.**

Appellant challenges the sufficiency of the evidence supporting the jury's verdict and the district court's denial of his Rule 29 motion for judgment of acquittal on all counts.[2] We normally review challenges to the sufficiency of the evidence and the denial of Rule 29 motions by asking whether, taking the evidence in the light most favorable to the jury's verdict, a rational jury could have found the defendant guilty beyond a reasonable doubt. <u>United States</u> v. <u>Thompson</u>, 449 F.3d 267, 275 (1st Cir. 2006); <u>United States</u> v. <u>Morillo</u>, 158 F.3d 18, 22 (1st Cir. 1998) (challenges to the sufficiency of the evidence and Rule 29 motions

---

[2] In parts V and VI of this opinion, we address the admissibility of certain evidence. Often, in criminal cases involving challenges to both the admissibility of certain evidence and the sufficiency of the evidence to support convictions, we will address the admissibility issues first to determine which evidence is appropriately considered in the sufficiency of the evidence analysis. <u>See</u>, <u>e.g.</u>, <u>United States</u> v. <u>Avilés-Colón</u>, 536 F.3d 1, 13 (1st Cir. 2008). We choose a different sequence here because the sufficiency of the evidence analysis helps to illuminate the discussion of the admissibility issues in parts V and VI.

-12-

present a single issue for review). Because appellant failed to renew his motion for judgment of acquittal at the close of evidence, however, we will reverse his convictions "only if the verdict threatens to work a clear and gross injustice." United States v. Gobbi, 471 F.3d 302, 309 (1st Cir. 2006).

**A. The Cocaine Charges**

We begin with the drug charges. 21 U.S.C. § 841(a)(1) makes it illegal to distribute or possess with intent to distribute a controlled substance. Because appellant did not possess the cocaine on his person at the time of the search, the government relied on a theory of constructive possession, which "'exists when a person knowingly has the power and intention at a given time to exercise dominion and control over an object either directly or through others.'" United States v. García-Carrasquillo, 483 F.3d 124, 130 (1st Cir. 2007) (quoting United States v. McClean, 409 F.3d 492, 501 (1st Cir. 2005)). Such possession "can be joint, does not require actual ownership . . . and can be established through circumstantial evidence, though 'mere presence or association with another who possessed the contraband is insufficient.'" United States v. DeCologero, 530 F.3d 36, 67 (1st Cir. 2008) (quoting United States v. Wight, 968 F.3d 1393, 1397 (1st Cir. 1992)).

Defendant argues, in the main, that he was only at 15 Cabot Street on the day of the search because he was babysitting Yarrell's children and that he was not involved with the narcotics

-13-

trade being run out of the home. He points out that he was not linked to the drugs through physical possession or evidence such as fingerprints. That is true. Nevertheless, other circumstantial evidence permitted a reasonable jury to conclude that appellant lived at 15 Cabot Street, knew of the drugs' existence, had the power and intention to exercise control over them, and had the intention to distribute them.

Cable, electricity, and telephone bills for service at 15 Cabot Street were in appellant's name. Inside the home, officers found a personal letter addressed to appellant at 15 Cabot Street as well as his student loan statement. Moreover, when the officers executing the warrant entered the home, they saw appellant sitting on the edge of the bed in the master bedroom, wrapped in a damp towel as if he had just showered. Inside the bedroom was a photograph of appellant and his girlfriend, Yarrell, who owned the house. Men's clothes were on the bedroom floor and inside the bedroom closet. In the drawer of the night stand there was a cell phone registered to appellant, a men's watch, and cash.

Evidence of the drug trade -- such as digital scales, plastic baggies, baking soda, and large amounts of cash -- was scattered throughout the home. There was evidence of appellant's prior involvement with the distribution of cocaine, indicating his familiarity with these items. Officer Levangie testified that, in addition to drugs themselves, plastic bags, scales, and money were

-14-

among the items he had frequently seen and seized during drug searches in Brockton, and that he had seen baking soda used by Brockton drug dealers as a cutting agent. The government also introduced into evidence a recording of a collect call appellant had made to Yarrell while he was in a Massachusetts jail approximately one year prior to the search. On the call, appellant told Yarrell how to package and sell cocaine at 15 Cabot Street. This evidence directly contradicted appellant's theory that he was an innocent bystander to the drug trade happening within Yarrell's home.

Further, $2,090 in cash was found in the pocket of a men's jacket inside the bedroom where appellant was sitting at the inception of the search. Officer Levangie testified that Brockton drug dealers tend to keep large amounts of cash on hand and readily available; appellant was the nearest person to the cash and the only adult in the home. Officer Levangie also testified that drug dealers often change their telephone numbers and make frequent phone calls. The cell phone found in the drawer was registered to appellant, had been activated just two days before, and had already been used to make 161 phone calls. Finally, Officer Levangie opined that the cocaine seized from 15 Cabot Street had a street value in excess of $12,000, a quantity consistent with narcotics dealing rather than personal use.

Taking this evidence in the light most favorable to the jury's verdict, we find that a reasonable jury could convict appellant for possession with intent to distribute cocaine. Failing to meet our regular standard of review for Rule 29 and evidentiary sufficiency challenges, appellant necessarily also fails to meet the more stringent "clear and gross injustice" standard. See Gobbi, 471 F.3d at 309.

## B. The Ammunition Charge

18 U.S.C. § 922(g)(1) makes it illegal for "any person -- who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year . . . to possess in or affecting commerce, any firearm or ammunition . . . ." Such possession may be constructive. DeCologero, 530 F.3d at 67. The government introduced uncontroverted evidence that the appellant is a convicted felon and that the ammunition found in the night stand had traveled through interstate commerce. It also introduced evidence sufficient to establish constructive possession of the bullets. The ammunition was located in a drawer next to appellant's cellular telephone, a men's watch, a key, and cash, and was within arm's reach of appellant when the officers entered the bedroom. Furthermore, the cellular telephone lying next to the bullets had been used to make a phone call thirty minutes before the search. Finally, Officer Levangie testified that it was "common practice" for Brockton drug dealers to hide weapons or pass

them off to "co-workers," providing an explanation for why appellant would possess ammunition although he was not found to be in possession of a gun. A rational jury could have found that appellant had the requisite "power and intention . . . to exercise dominion and control" over the items in the drawer, including the ammunition. McClean, 409 F.3d at 501.

As with the drug charges, we find no "clear and gross injustice" in the district court's denial of appellant's Rule 29 motion on the weapons charge.

**V.**

Appellant objects to the admission of certain "prior act" evidence at trial. Before trial, the government notified the court and defense counsel that it intended to introduce evidence that the defendant had three prior cocaine-related convictions in Massachusetts state court: two for possession with intent to distribute cocaine and one for distribution of cocaine. It also sought permission to admit into evidence the recording of a telephone call made by appellant from a Massachusetts jail approximately one year before the incidents leading to Trooper Long's search of 15 Cabot Street. On the collect phone call, which appellant was warned would be recorded, appellant gave his girlfriend, Yarrell, instructions on how to package and sell

cocaine stashed at 15 Cabot Street and inquired about the finances of his narcotics operation.[3]

The government argued that the prior convictions and the telephone call were relevant to show the defendant's knowledge of the cocaine in the home and his intent to distribute the cocaine and, as such, should not be excluded by Federal Rule of Evidence 404(b)'s prohibition against prior bad act evidence.[4] The district court agreed, admitting the convictions as relevant to the defendant's knowledge and intent.[5] The court reserved its ruling on the phone call, but at trial determined that it was also admissible. We review a district court's determination about whether to exclude evidence under Rule 404(b) or 403 for abuse of discretion. United States v. Tse, 375 F.3d 148, 155 (1st Cir. 2004).

---

[3] The statements in the telephone calls were not hearsay because they were "admission[s] by a party-opponent." Fed. R. Evid. 801(d)(2); see id. (admissions are, inter alia, statements offered against a party that are "the party's own statement"); 2 Kenneth S. Brown, McCormick on Evidence § 254 (6th ed. 2006) ("Admissions are simply words or actions inconsistent with the party's position at trial, relevant to the substantive issues in the case, and offered against the party."). Because the statements described appellant's own prior bad acts, Rule 404(b) was implicated and the appropriateness of admitting the testimony was evaluated under that rule.

[4] The government did not seek to admit the convictions for the purpose of impeaching the defendant, who did not testify. See Fed. R. Evid. 609(a).

[5] The district court also noted that evidence of one prior felony conviction was necessary to establish the felon element of the § 922(g)(1) charge.

Under Federal Rule of Evidence 404(b), evidence of prior bad acts is not admissible to show the actor's bad character or propensity to commit crime. United States v. Arias-Montoya, 967 F.2d 708, 709 (1st Cir. 1992). "While logically relevant, 'propensity' or 'bad character' evidence is deemed to carry an unacceptable risk that the jury will convict the defendant for crimes other than those charged," id., or simply because "a bad person deserves punishment," United States v. Moccia, 681 F.2d 61, 63 (1st Cir. 1982). Prior act evidence, however, is admissible for any other relevant purpose, such as to show "motive, opportunity, intent, preparation, [or] plan . . ." Fed. R. Evid. 404(b).

This circuit imposes a two-part test to determine whether prior act evidence is admissible. United States v. Whitney, 524 F.3d 134, 141 (1st Cir. 2008). First, a court must ask whether the proffered evidence has a "special" relevance, i.e., a non-propensity relevance. Id. Next, the court must determine whether the evidence should be excluded under Federal Rule of Evidence 403, which allows courts to exclude relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Fed. R. Evid. 403.

Here, the challenged evidence passed the first prong of the test because of its "special" relevance to appellant's defense

that he was innocently in the home to babysit the children at the time of the search. A person with previous convictions for possession with intent to distribute crack and powder cocaine would have been more likely to recognize the drug trade paraphernalia that was scattered about the home, such as baking powder, plastic baggies, digital scales, and cash. See Moccia, 681 F.2d at 63 (prior marijuana conviction admissible to support the government's theory that "one who lives on a farm with marijuana in the freezer room and under the chicken coop and has a prior possession conviction is more likely to know about the presence of marijuana than one who lives on such a farm and does not have a past possession conviction."). The prior convictions were also relevant to the issue of appellant's intent to exercise control over the drugs in the home. The recorded phone call was similarly relevant to appellant's knowledge of the accouterments of the drug trade in the home and his intent to exercise control over the drugs.

Because the prior act evidence had special relevance, we must next ask whether the evidence should have been excluded under Rule 403 because its probative value was "substantially outweighed" by its danger of unfair prejudice. Fed. R. Evid. 403; Whitney, 524 F.3d at 141. Even though the writer of this opinion is concerned about the "piling on" of multiple criminal convictions when a lesser number might suffice to establish the proposition of concern to the government, a majority of the panel does not believe that

the district judge abused his discretion in this instance, taking the view as well that the piling on argument was not even properly made in the district court or advanced in this form on appeal.[6]

We review non-constitutional evidentiary errors for harmlessness; an error is harmless if it is "highly probable that the error did not influence the verdict." United States v. Roberson, 459 F.3d 39, 49 (1st Cir. 2006) (quotation marks and citation omitted). Even if there was an error in the admission of the three prior felony convictions (and a majority of the panel does not suggest that there was), that error was harmless in light

_____

[6] Unlike my colleagues, I conclude that there was an abuse of discretion in the district court's admission of appellant's three prior felony convictions and that the issue was properly raised below and on appeal. Therefore, I would have preferred to address the admissibility issue directly and thereby give some content to our oft-stated but unhelpful caution that the government and the district court should "be careful as to the admission of extrinsic act evidence under Rule 404(b)." Arias-Montoya, 967 F.2d at 713 (quotations and modifications omitted); see also United States v. Garcia-Rosa, 876 F.2d 209, 221 (1st Cir. 1989); United States v. Flores-Pérez, 849 F.2d 1, 8 (1st Cir. 1988). Here, the admission of the telephone recording and one of the prior convictions was appropriate, given appellant's claim that he was innocently at 15 Cabot Street. However, the probative value of the other two cocaine convictions was "substantially outweighed by the danger of unfair prejudice . . . [and the] needless presentation of cumulative evidence." Fed. R. Evid. 403. The evidence of the phone call, which was powerfully inculpatory, and a single prior drug conviction would have allowed the government to challenge appellant's claim of innocence without incurring the risk at the heart of Rule 404 -- the danger that "a jury will convict for crimes other than those charged -- or that, uncertain of guilt, it will convict anyway because a bad person deserves punishment . . . ." Moccia, 681 F.2d at 63. Here the government incurred that risk by pressing for the admission of all three convictions. Fortunately for the government, however, the resulting error was harmless.

of the other overwhelming evidence against appellant, which included the copious drug paraphernalia in the home where he resided, the cell phone records that fit the pattern of a drug dealer, and the ammunition and cash found in his possession. See supra Part IV.

## VI.

Appellant challenges the admission of the jail call to Yarrell on a different ground, arguing that the admission of Yarrell's recorded statements violated his Sixth Amendment rights as articulated by the Supreme Court in Crawford v. Washington, 541 U.S. 36 (2004). Under Crawford, "a declarant's 'testimonial' out-of-court statement is not admissible under the Confrontation Clause unless (1) the declarant testifies, or (2) the defendant had a prior opportunity for cross-examination and the declarant is unavailable, or (3) the evidence is admitted for purposes other than establishing the truth of the matter asserted." United States v. Maher, 454 F.3d 13, 19-20 (1st Cir. 2006) (citations omitted).

Yarrell's statements were not admitted to prove the truth of the matter asserted but rather to provide context for appellants' statements, and thus did not violate the Confrontation Clause. See United States v. Walter, 434 F.3d 30, 33-34 (1st Cir. 2006) (recorded statements of a non-testifying informant were admissible to show context of defendant's conversation with informant). During the phone conversation, appellant inquired

about the status of money and drugs left with Yarrell.  For

example, the following exchanges were recorded:

> Hicks: I left you with three two-and-a-halfs,
> I mean, two-and-a-quarter, whatever, and I
> left you with three two-and-a-quarters.  There
> was three sets of dimes. Am I right?
>
> Yarrell: Yup.
>
> Hicks: That's almost $17,000 worth of shit,
> $16,000 . . . Now, plus I left you with almost
> seven Gs in cash, if I'm not mistaken, like
> 65, we'll say 65 even though it was more than
> 65.  It was --
>
> Yarrell: No. It was 66.
>
> Hicks: All right, 6,600, so almost seven Gs in
> cash. Now, you're telling me you got like two
> Gs worth of stuff left and the other powder
> stuff.
> . . .
> Hicks: I know for a fact I left you with
> almost eight things.
>
> Yarrell: with what?
>
> Hicks: Well, six. Let's say six things, not
> including the raw food because the raw food is
> like two things alone so let's say six . . .
> What . . . you been doing with my money?

The statements made by Yarrell, little more than brief responses to

Hicks's much more detailed statements, were unquestionably admitted

to provide context for the statements of appellant.  Because they

were not entered for the truth of the matter asserted, they did not

implicate the Confrontation Clause.

Appellant argues that the trial court improperly admitted Officer Levangie's expert testimony about the use of firearms by Brockton drug dealers.  We review this challenge to the admission of expert testimony for abuse of discretion.  <u>United States</u> v. <u>Giambro</u>, 544 F.3d 26, 32 (1st Cir. 2008).

Characterizing Officer Levangie's testimony as "profiling" testimony, appellant argues that it was improper expert testimony that invaded the fact-finding function of the jury. Specifically, he objects to Officer Levangie's testimony that weapons are prevalent among drug dealers in Brockton and that it is "common practice" for weapons to be hidden or passed off between dealers and "co-workers" who sell drugs for them.

This testimony was directly relevant to appellant's argument, suggested during cross examination and repeated in closing argument, that he was not linked to the bullets because he was not found in possession of a gun.  Officer Levangie, who has extensive experience investigating narcotics dealers in Brockton, was well qualified to explain why appellant was found with ammunition and not a firearm.  That was a proper subject of expert testimony because it "assist[ed] the trier of fact to understand the evidence or to determine a fact in issue."  Fed. R. Evid. 702.[7]

---

[7] Appellant does not object to Officer Levangie's qualification as an expert witness.

The average juror might not understand the fluid exchange of weapons among drug dealers in Brockton and thus might find it odd that a drug dealer would possess ammunition but no weapon.

In <u>United States</u> v. <u>Lopez-Lopez</u>, 282 F.3d 1, 14-15 (1st Cir. 2002), we explained that expert testimony was properly admitted to explain how Puerto Rican drug dealers use Global Positioning Systems to facilitate air drops and cellular telephones to enable communication among boats -- subjects similarly unfamiliar to the average juror. We find no abuse of discretion in the district court's admission of Officer Levangie's testimony about the prevalence and use of firearms among drug dealers in Brockton.

**VIII.**

Finally, appellant objects to his sentence, claiming that his Sixth Amendment right to a jury trial was violated because the prior convictions that made him eligible to be sentenced as an armed career criminal, 18 U.S.C. § 924, and a career offender, U.S.S.G. § 4B1.1, were not proven to a jury beyond a reasonable doubt. The Supreme Court has stated that the question of whether a defendant has a predicate conviction "is exempt from the general rule that a jury must find any fact that raises a sentence above the statutorily-prescribed maximum." <u>United States</u> v. <u>Duval</u>, 496 F.3d 64, 80 (1st Cir. 2007) (describing <u>Almendarez-Torres</u> v. <u>United</u>

<u>States</u>, 523 U.S. 224, 247 (1998)).  Bound by this precedent, we reject appellant's Sixth Amendment challenge to his sentence.

<u>Affirmed</u>.