**UNITED STATES of America, Plaintiff**

**v.**

**Carlos LOPEZ–DIAZ [2], Defendant.**

**Civil No. 11–319 (JAG).**

United States District Court,
D. Puerto Rico.

Jan. 9, 2012.

Julia Diaz–Rex, United States Attorneys Office, District of Puerto Rico San Juan, PR, for Plaintiff.

## OPINION AND ORDER

GARCIA–GREGORY, District Judge.

Pending before the Court is Defendant Carlos Lopez–Diaz's [2] Motion to Suppress (Docket No. 101), and the Magistrate Judge's Report and Recommendation (the "Report") advising the Court to deny said motion (Docket No. 122). For the reasons stated below, the Court **ADOPTS** the Report, and accordingly, **DENIES** Defendant's Motion to Suppress.

## BACKGROUND[1]

Co-defendant Carlos López–Díaz [2] ("López–Díaz [2]") is a licensed dentist who operated a mobile clinic providing dental services in Puerto Rico. He was charged, together with other defendants, in an Indictment with conspiracy to commit health care fraud from January 1, 2006 through July 27, 2011. López–Díaz [2] was also charged with providing the personal information of beneficiaries[2] to the principal suspect, his brother José López–Díaz ("López–Díaz [1]"). (Docket No. 3, Indictment, ¶¶ 1–14). Finally, Co-defendant López–Díaz [2] stands accused of aggravated identity theft for aiding and abetting Lopez–Diaz [1]. (Docket No. 3, Indictment, p. 12 ¶¶ 16–20).[3]

On November 23, 2011, defendant López–Díaz [2] filed a "Motion to Suppress Evidence Illegally Seized from his Home and Home Offices" claiming the search warrant executed at his home and home offices on July 27, 2011, at Urb. Baldrich lacked probable cause because the search warrant and the affidavit in support thereof were primarily the result of an investi-

gation of his brother. López–Díaz [2] seeks to suppress the evidence seized during the search conducted at Urb. Baldrich and all evidence subsequently obtained as a result, including any statement made by López–Díaz [2]. (Docket No. 101). López–Díaz [2] also claims that the agents withheld in the affidavit that there was no evidence that defendant knew of any alleged fraudulent billings by his brother. Thus, López–Díaz [2] argues that the good faith exception for search warrants does not apply. Furthermore, he requests a *Franks* hearing, *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), on the basis that there are factual issues that impede a proper ruling on his motion to suppress.

On the other hand, the Government contends that there was probable cause for the Magistrate Judge to issue the search warrant in question, as there was reason to believe evidence supporting health care fraud and identity theft was being maintained at said home and home offices. In addition, the government claims the location of López–Díaz's [2] address was obtained from the Medicare Enrollment documentation, bank records and the Puerto Rico Department of Motor Vehicle records, thus making the location a place of business for López–Díaz [2]. (Docket No. 116).

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636(b)(1)(B), Fed.R.Civ.P. 72(b) and Local Rule 72, a district court may refer dispositive motions to a United States

---

**1.** This section is taken with minor modifications from the Report.

**2.** This information included names, addresses, telephone numbers, dates of birth and medical plan insurance identification numbers.

**3.** The Indictment contains a forfeiture allegation under Title 18, United States Code, Section 982(a)(7) upon conviction for Counts One through Fifteen, for money equal to $547,410.01 of proceeds obtained as a result of the offenses.

magistrate judge for a Report and Recommendation. *See Alamo Rodriguez v. Pfizer Pharmaceuticals, Inc.*, 286 F.Supp.2d 144, 146 (D.P.R.2003). The adversely affected party may "contest the [m]agistrate [j]udge's report and recommendation by filing objections 'within ten days of being served' with a copy of the order." *United States v. Mercado Pagan*, 286 F.Supp.2d 231, 233 (D.P.R.2003) (citing 28 U.S.C. § 636(b)(1)). If objections are timely filed, the district judge shall "make a *de novo* determination of those portions of the report or specified findings or recommendation to which [an] objection is made." *Rivera de Leon v. Maxon Eng'g Servs.*, 283 F.Supp.2d 550, 555 (D.P.R.2003). A district court can "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate." *Alamo Rodriguez*, 286 F.Supp.2d at 146 (citing *Templeman v. Chris Craft Corp.*, 770 F.2d 245, 247 (1st Cir.1985)). However, if the affected party fails to timely file objections, the district court can assume that they have agreed to the magistrate judge's recommendation. *Id.*

In *Spinelli v. U.S.*, the Supreme Court outlined four "established propositions" that govern probable cause and the issuance and review of search warrants. *See Spinelli v. U.S.*, 393 U.S. 410, 419, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). First, "that only the probability, and not a prima facie showing, of criminal activity is the standard of probable cause." *Id.* Second, "that affidavits of probable cause are tested by much less rigorous standards than those governing the admissibility of evidence at trial." *Id.* Third, "that in judging probable cause issuing magistrates are not to be confined by niggardly limitations or by restrictions on the use of their common sense." *Id.* Finally, "that their determina-

tion of probable cause should be paid great deference by reviewing courts." *Id.*

## ANALYSIS

Lopez–Diaz [2] argues that the Magistrate Judge erred in concluding that there was probable cause to search his home and offices. Specifically, he contends that a close reading of the affidavit "makes clear that there is little or nothing implicating [López–Díaz [2]] in knowingly and intentionally participating" in the illegal activities of his brother, López–Díaz [1]. (Docket No. 137, p. 8).[4] In essence, he argues that the search warrant was illegal because the agents did not have probable cause to arrest him.

This argument does not hold water. In *Zurcher v. Stanford Daily*, the Supreme Court held that "once it is established that probable cause exists to believe a federal crime has been committed[,] a warrant may issue for the search of any property which the magistrate has probable cause to believe may be the place of concealment of evidence of the crime." *Zurcher v. Stanford Daily*, 436 U.S. 547, 558, 98 S.Ct. 1970, 56 L.Ed.2d 525 (1978)(internal citations omitted). *Zurcher* validated a search warrant executed on the property of a third party, notwithstanding the fact that there was no probable cause to arrest the property's owner or anyone inside that property. The Court thought it "untenable to conclude that property may not be searched unless its occupant is reasonably suspected of crime and is subject to arrest." *Zurcher*, 436 U.S. at 559, 98 S.Ct. 1970. Shortly thereafter, the First Circuit recognized that this "rule is obviously the same with respect to a person who the police do indeed suspect but do not have probable cause to arrest; such a person's

---

**4.** Defendant makes no specific objection to the Report. Rather, Defendant reiterates the arguments already presented and disposed of before the Magistrate Judge.

property may be searched upon probable cause to believe that fruits, instrumentalities, or evidence of the crime are present, even though the products of the search may implicate him." *U.S. v. Melvin*, 596 F.2d 492, 496 (1st Cir.1979) (*citing Carroll v. United States*, 267 U.S. 132, 158–59, 45 S.Ct. 280, 69 L.Ed. 543 (1925)).

■ Consequently, even if the affidavit did not establish probable cause to believe that Defendant Lopez–Diaz [2] had committed a crime, a matter which we do not decide here, the warrant authorizing the search of his house and office was valid. The Magistrate Judge correctly concluded that the affidavit, fairly read, establishes probable cause to believe that a crime had been committed, and that Defendant Lopez–Diaz's [2] Baldrich property might have been "the place of concealment of fruits, instrumentalities, or evidence of the crime." [5]

In an attempt to save his argument from the holdings in *Zurcher* and *Melvin*, defendant offers as persuasive authority *Voicenet Communications, Inc. v. Corbett*, Civil Case No. 04–1318, Slip Copy, 2010 WL 3657840 (E.D.Pa.2010).[6] In that case, according to defendant, the affidavit that supported the search warrant alleged that the property owner committed a federal offense. Thus, in order for the warrant to be valid, "the magistrate must have been able to conclude that under the totality of the circumstances there was a 'fair probability'" that the suspect knowingly committed the crime. *Id.* at *8–9. The Court does not dispute that there must be probable cause to believe a crime has been committed in order to issue a search warrant.[7] But that is beside the point. In the case at bar, the affidavit was ripe with information that allowed probable cause to believe that a health-care fraud scheme had taken place. Thus, *Corbett* adds nothing to our analysis. *Id.*

As the Report describes in detail, the prime suspect used his brother's mobile medical practice as a springboard to launch his fraudulent scheme. The sources in the affidavit indicated that documents and evidence relating to this crime were located in defendant 2's property. The Magistrate Judge found, *inter alia*, that "a spreadsheet containing López–Díaz [2]'s patient information was created and kept at his home offices." (Docket No. 122, p. 10). López–Díaz [1] would make copies of this spreadsheet at his brother's house, and use the information gleaned to fill out the fraudulent medical claims. *Id.* On the other hand, Ms. Williams–Nieves, secretary to both brothers, stated that López–Díaz [1] worked as a "general practitioner" and kept medical documents in his brother's office. (*Id.* at p. 8). Finally, we note that López–Díaz [1] based many of his fraudulent claims on the personal information of his brother's patients. (*See* Docket No. 122, p. 6–7). Thus, there was probable cause to think that Lopez–Diaz's [2] home and office in Baldrich was a place of concealment for the instrumentalities or

---

5. The Magistrate Judge gave additional weight to the affidavit, as it was "based on information provided by multiple sources." (Docket No. 122, p. 9). These sources included co-defendant Ms. Williams–Nieves (who worked as a secretary for both defendants Lopez–Diaz); the observations of the federal agents in charge of the investigation; statements made by health care providers; and statements from people associated with Hogar Huerto de Jesus and Hogar Cristo Rey.

6. This case was decided by a district court in the Third Circuit and as such, carries little weight of authority.

7. The application for a search warrant must allow for probable cause to believe that 1) a crime has been committed, and 2) specific evidence of the offense will be found at the place to be searched.

evidence of the fraud scheme. The search warrant to examine López–Díaz's [2] property was clearly valid.[8]

*Material Omissions in the Affidavit and the Franks Hearing*

Lopez–Diaz [2] also argues for suppression on the basis that the agents made material omissions in their application for a search warrant. He contends that the agents "knew full well that there was no evidence that Dr. Carlos Lopez knew of any alleged fraudulent billings by his brother, Dr. Jose Lopez." (Docket No. 137, p. 11). Therefore, defendant 2 claims, the Magistrate Judge had no basis to find probable cause to issue the search warrant.

The Magistrate Judge determined that these omissions are immaterial because the affidavit included large amounts of evidence from other sources. Effectively, the Magistrate Judge found that even if the "misleading statements from the affidavit were excised—or included—there would still be more than adequate showing of probable cause." (Docket No. 122, p. 13). Here, we pay great deference to the Magistrate Judge's determination of probable cause. *Spinelli*, 393 U.S. at 417–19, 89 S.Ct. 584. After carefully examining the Report and the associated Objections, we find no reason to depart from the Magistrate Judge's reasoning. In addition, the Magistrate Judge's conclusion is consistent with our finding above: López–Díaz [2]'s knowledge of his brother's scheme has no bearing on the validity of the search warrant issued in this case.

 Finally, Lopez–Diaz [2] requests a hearing on the motion to suppress under *Franks v. Delaware*, 438 U.S. 154, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). This type of

pretrial hearing is necessary when there are factual disputes that, if resolved in the defendant's favor, would warrant the requested relief. *United States v. D'Andrea*, 648 F.3d 1, 3 (1st Cir.2011). However, as we stated above, even if we found that defendant 2 had no knowledge of his brother's illicit dealings, the search warrant would still be valid. Thus, a *Franks* hearing would be of no help to López–Díaz [2].

### CONCLUSION

For the reasons stated above, the Court **ADOPTS** the Magistrate Judge's recommendation and thus **DENIES** Defendant's Motion to Suppress and request for a *Franks* hearing.

IT IS SO ORDERED.

### REPORT AND RECOMMENDATION

CAMILLE L. VELEZ–RIVE, United States Magistrate Judge.

### INTRODUCTION

Co-defendant Carlos López–Díaz [2] (hereafter defendant "López–Díaz [2]" or "defendant 2") was charged, together with other defendants, in an Indictment for a conspiracy in Count One to commit health care fraud from January 1, 2006 through July 27, 2011 and substantive charges in Counts One to Fourteen related to defraud as Medicare provider and false claims for payment. Title 18, *United States Code*, Secs. 1347, 1349 and 2. Defendant López–Díaz [2] is a licensed dentist, who operated a mobile clinic providing services in Puerto Rico, and is charged along with his brother co-defendant José López–Díaz [1] (hereafter defendant "López–Díaz [1]" or "defendant 1"), with providing beneficiary

---

**8.** Since we find that the search warrant is valid, we need not reach López–Díaz's [2] arguments regarding the good faith exception.

*United States v. Leon*, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

personal information, such as names, addresses, telephone numbers, date of births and medical plan insurance identification number to defendant 1. (Docket No. 3, Indictment, ¶¶ 1–14).

Co-defendant López–Díaz [2] also appears charged in Counts Sixteen through Twenty for aggravated identity theft, for aiding and abetting with defendant 1, having possessed, used and transferred, without lawful authority, a means of identification of another person, in violation of 18 *United States Code,* Section 1028A(a)(1) and 2. (Docket No. 3, Indictment, p. 12 ¶¶ 16–20).[1]

On November 23, 2011, defendant López–Díaz [2] filed a "Motion to Suppress Evidence Illegally Seized from his Home and Home Offices" claiming the search warrant executed at his home and home offices on July 27, 2011, at Urb. Baldrich lacked probable cause because the search warrant and the affidavit in support thereof were the result of an investigation of primarily his brother, defendant 1, for allegedly submitting fraudulent billings of Medicare patients. As such, defendant López–Díaz [2] claims the agents knew there was no evidence that he knew of any alleged fraudulent billings by his brother and the agents did not inform this Magistrate Judge of that fact at the time the search warrant was authorized. Thus, the *Leon* good faith exception does not apply and a *Franks* hearing is requested. Accordingly, defendant López–Díaz [2] seeks to suppress all the evidence seized on July 27, 2011, during the search of his home and home offices at Urb. Baldrich and all evidence subsequently obtained as a result of this illegal search and seizure, including

any statement made by defendant 2. (Docket No. 101).

On December 5, 2011, the government filed its response to the above motion to suppress moving the court to deny the same because there was probable cause for this Magistrate Judge to issue the search warrant for the home and home offices of defendant 2 as there was reason to believe evidence supporting health care fraud and identity theft was being maintained at said home and home offices. In addition, the government claims the location of defendant 2's address was obtained from the Medicare Enrollment documentation, bank records and the Puerto Rico Department of Motor Vehicle records, thus making the location a place of business for defendant 2. (Docket No. 116).

The above motion to suppress was referred to this Magistrate Judge. (Docket Nos. 106 and 108). As such, this report and recommendation follows.

## LEGAL DISCUSSION

### A. Lack of Probable Cause that Evidence would Likely be Found in the Property.

Defendant López–Díaz [2] claims the affidavit in support of the warrant application fails to establish probable cause to believe that evidence of a crime would likely be found in his home and home offices. The government in turn submits the affidavit contained sufficient information for this Magistrate Judge to determine there was a fair probability that evidence relevant to the commission of the offense was at the place to be searched.[2]

---

1. The Indictment contains a forfeiture allegation under Title 18, *United States Code,* Section 982(a)(7) upon conviction for Counts One through Fifteen, for money equal to $547,410.01 of proceeds obtained as a result of the offenses.

2. It is clarified that the search warrant at issue and the affidavit in support thereof were authorized by this Magistrate Judge and not the Chief District Judge as mentioned by the government at pages 5–6 of its opposition. (Docket No. 116).

The Court of Appeals for the First Circuit examines the affidavit submitted to the magistrate judge " 'in a practical, commonsense fashion,' " and gives " 'considerable deference' to the issuing magistrate's conclusion that probable cause has been established." *United States v. McElroy,* 587 F.3d 73, 76 (1st Cir.2009); *United States v. Woodbury,* 511 F.3d 93, 98 (1st Cir.2007) (quoting *United States v. Feliz,* 182 F.3d 82, 86 (1st Cir.1999)).

 A search warrant application must demonstrate probable cause to believe that: 1) a crime has been committed, and 2) enumerated evidence of the offense will be found at the place to be searched-the so-called 'nexus' element. In considering whether a warrant affidavit establishes probable cause, a magistrate judge's task is " 'to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place.' " *Feliz,* 182 F.3d at 86 (quoting *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)); *United States v. Hicks,* 575 F.3d 130, 136 (1st Cir.2009).

"Put differently, the application must give someone of 'reasonable caution' reason to believe that evidence of a crime will be found at the place to be searched." *Id.* (quoting *Texas v. Brown,* 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983)). "The probable-cause nexus between enumerated evidence of the crime and the place 'can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime].' " *Id.* (quoting *United States v. Charest,* 602 F.2d 1015, 1017 (1st Cir.1979)); *United States v. Rodrigue,* 560 F.3d 29, 33 (1st Cir.2009).

Probable cause determinations for the issuance of a search warrant are to be upheld if, given all the circumstances set forth in the affidavit including the veracity and knowledge of persons supplying hearsay information, there is fair probability that contraband or other evidence of a crime will be found in a particular place. *United States v. Bucuvalas,* 970 F.2d 937 (1st Cir.1992), *abrogated on other grounds by Cleveland v. United States,* 531 U.S. 12, 121 S.Ct. 365, 148 L.Ed.2d 221 (2000)

Pursuant to the information contained in the affidavit subscribed under oath by Special Agent Kristina Ruisanchez of the United States Secret Service (hereafter "SA Ruisanchez") related to the investigation, under the totality of the circumstances, there was probable cause for the issuance of the search warrant at Urb. Baldrich. We explain.

The affidavit subscribed by SA Ruisanchez established the following information, herein summarized, related to defendant López–Díaz [2].

On August 2010, the United States Department of Health and Human Services, Office of Inspector General (hereafter "HHS–OIG") initiated an investigation into the billing practices of physician Dr. Jose López–Díaz [1], brother of defendant 2. This investigation was based on complaints from SafeGuard Services (hereafter "SGS"), the federally contracted Program Safeguard Contractor for the Medicare Program, and similar complaints from the Special Investigation Units of Medicare y Mucho Mas (hereafter "MMM") and Medical Card Systems (hereafter "MCS") which are federally funded Medicare Advantage Plans serving beneficiaries in Puerto Rico.[3]

**3.** These entities are responsible for investigating potential fraud and abuse of the Medicare

Internal audits and medical reviews by SGS, MMM and MCS revealed that Dr. José López–Díaz [1], a Puerto Rico licensed general physician had allegedly submitted false medical hard-copy claims to their programs and had been reimbursed for unnecessary services and/or for services never rendered. These services included emergency room medical treatments and surgical procedures. The complaint referral from MMM included reports that they had contacted approximately twenty (20) beneficiaries for whom Dr. José López–Díaz [1] had billed medical services. All of these beneficiaries reported they did not know Dr. José López–Díaz [1] and they had never received the physician's services that appeared on the medical claims.

During additional medical claims review of beneficiaries that appeared on medical claims submitted by Dr. José López–Díaz ▪ for services allegedly rendered at Guaynabo Medical Mall, it was found that at least eighteen (18) different beneficiaries appeared as residing at Chiroptera 846 Km. 07, Bo. Las Cuevas, Trujillo Alto, PR.

On May 27, 2011, SA Ruisanchez, along with another federal agent, traveled to the aforementioned address and found it to be Hogar Huertos De Jesús, an assisted living facility. Then, the agents interviewed the facility's owner, Rosana Martínez–Jiménez. Ms. Martínez–Jiménez stated that, sometime in late 2009 or early 2010, she received a visit from Dr. Carlos López–Díaz [2], a dentist. Dr. Carlos López–Díaz ▪ presented a proposal to Ms. Martínez–Jiménez to provide dentistry services in a mobile dentistry clinic to the residents of the facility. Ms. Martínez–Jiménez agreed because it was difficult to transport many of the residents away for services due to their medical and psychological conditions. Shortly thereafter, Dr. Carlos López–Díaz [2] arrived with a large vehicle equipped with dentist chairs and equipment and provided services to all of the residents.

Ms. Martínez–Jiménez was presented with copies of the claims submitted by Dr. José López–Díaz [1] and she recognized the names of the beneficiaries' as those of the residents of her facility who received dentistry services by Dr. Carlos López–Díaz [2]. These medical claims indicated that between January 19, 2010, and January 27, 2010, eighteen (18) of the residents of her facility were treated at the emergency room of Guaynabo Medical Mall for conditions which included bladder neck obstruction, umbilical hernia, fracture of the hand, and shoulder dislocation. After reviewing copies of these medical claims, Ms. Martínez–Jiménez stated that none of these residents had been transported to the Guaynabo Medical Mall for those conditions. Ms. Martínez–Jiménez further informed that, as legal guardian of the residents in her facility, she would have to sign the authorization for services to be rendered.

On June 1, 2011, SA Ruisanchez and another federal agent traveled to Hogar Cristo Rey and met with Social Worker Margarita Ortíz. Ms. Ortíz stated that Dr. Carlos López–Díaz [2] offered to provide dentistry services at the retirement facility. Ms. Ortíz provided Dr. Carlos López–Díaz [2] a list of the patients with their healthcare plan information and he provided services to several patients at the retirement facility, to include María Robles–Pimentel. Ms. Robles–Pimentel later received a service detail sheet from her

Program and Medicare Advantage Programs and assuring that all services billed are reasonable, medically necessary, and are in ac-

cordance with established regulations and policies.

healthcare plan, Triple–S, stating she had received services from Dr. José López–Díaz [1]. Ms. Ortiz contacted Dr. Carlos López–Díaz [2] to inquire about the charges. Dr. Carlos López–Díaz [2] stated that Dr. José López–Díaz [1] was his associate, a general practitioner who he consulted cases with. Ms. Ortíz declined any further services by Dr. Carlos López–Díaz [2] at the retirement facility.

SA Ruisanchez provided Ms. Ortíz with a list of patients included in the billings submitted by Dr. José López–Díaz [1]. Ortíz was able to confirm that several patients, who were included in the billings of Dr. José López–Díaz [1], had previously received dentistry services by Dr. Carlos López–Díaz [2] at the retirement facility.

On July 14, 2011, Leslie Williams–Nieves (a co-defendant) was interviewed and she stated she was a secretary at Centro Pediatrico, LV and at Cuidado Dental Terapeutico (mobile dentistry clinic). Ms. Williams–Nieves worked at Centro Pediatrico, LV since 2005 (6 years) and that Cuidado Dental Terapeutico was owned by Dr. Carlos López–Díaz [2]. Ms. Williams–Nieves' duties at Centro Pediatrico, LV and Cuidado Dental Terapeutico included administrative work and billing to Healthcare companies. Ms. Williams–Nieves was the only secretary with access to the medical billing system. Ms. Williams–Nieves averred that Dr. José López–Díaz [1] did not work at Centro Pediatrico, LV but kept documents in the office.

On July 20, 2011, SA Ruisanchez and other agents met with Ms. Williams–Nieves who stated that Dr. Carlos López–Díaz [2] presented a proposal to public schools, retirement facilities, and public projects among others to provide dentistry services in a mobile clinic. Dr. Carlos López–Díaz [2] obtained the healthcare plan information from the patients and transported it to his residence located at Urb. Baldrich, #215 Tous Soto St., San Juan, PR 00918. Ms. Williams–Nieves and Nahir Rodríguez–Candelario (a co-defendant), also a secretary at Centro Pediatrico, LV and Cuidado Dental Terapeutico, filed all medical records and entered the data while working at Dr. Carlos López–Díaz [2]'s medical office located at his residence.

Ms. Williams–Nieves indicated she took the information and billed the healthcare companies electronically. Ms. Williams–Nieves stated that Dr. José López–Díaz [1] allegedly worked at Cuidado Dental Terapeutico as a general practitioner. Dr. Carlos López–Díaz [2] previously explained to Ms. Williams–Nieves that the state regulations required him to have a general practitioner on his staff to see the patients before they receive dentistry services.

Ms. Williams–Nieves never saw Dr. José López–Díaz [1] providing medical services to Dr. Carlos López–Díaz [2]'s patients. Ms. Williams–Nieves indicated that a spreadsheet containing Dr. Carlos López–Díaz [2]'s patient information was created. This spreadsheet contained beneficiary personal information needed to fill out the medical claims in order to bill the healthcare companies. Ms. Williams–Nieves informed that Dr. José López–Díaz [1] traveled to Dr. Carlos López–Díaz [2]'s residence and made copies of the patient's records, to include the aforementioned spreadsheet with all the information from Dr. Carlos López–Díaz [2]'s patients.

Contrary to the assertions of defendant López–Díaz [2] in his motion to suppress, the above summarized information, which was contained in the affidavit under oath of SA Ruisanchez, was sufficient for this Magistrate Judge to determine there was a fair probability that evidence relevant to the commission of the offense was at the home and home offices of defendant López–Díaz [2]. The affidavit was drafted

based on information provided by multiple sources including, co-defendant Ms. Williams–Nieves (who worked as a secretary for both defendants López–Díaz), the owner of Hogar Huerto de Jesus, a social worker from Hogar Cristo Rey, medical claim reviews, statements from the health care providers, and the own observations and investigation of SA Ruisanchez and other federal agents, among others.

This information shows López–Díaz [1], a general practitioner, was the associate of López–Díaz [2], a dentist, because he (defendant 2) needed a general practitioner to provide dentistry services pursuant to state regulations. Moreover, the affidavit shows how the information from multiple patients, who received dentistry services from defendant LópezDíaz [2], was used by defendant López–Díaz [1] to bill to Medicare for medical services he (defendant 1) did not provide to the patients. The information also demonstrates Dr. López–Díaz [1] never provided any medical services to the patients of dentist López–Díaz [2]. The affidavit also contains information that López–Díaz [2] kept patient information from his mobile dentistry practice at his home/home offices in Urb. Baldrich. As a matter of fact, Ms. Williams–Nieves (secretary to both defendants López–Díaz) filed all medical records and entered the data while working at Dr. Carlos López–Díaz [2]'s medical office located at his residence. Moreover, defendant López–Díaz [2] billed as if the medical services were rendered at his medical office located in his home. In addition, a spreadsheet containing López–Díaz [2]'s patient information was created and kept at his home offices. This spreadsheet contained the beneficiaries personal information needed to fill out the medical claims and bill the healthcare companies. Defendant Lopez–Díaz [1] would go to defendant

López–Díaz [2]'s home/home offices to make copies of the spreadsheet and the patient records and used the information to fraudulently bill for services not rendered.

Based on the above information contained in the affidavit in support of the search warrant, under the totality of the circumstances, the undersigned had sufficient grounds to find probable cause to issue the search warrant for the home and home offices of defendant López–Díaz [2] at Urb. Baldrich for there was a fair probability that evidence relevant to the commission of the offense would be located therein.

**B. Information Not Provided to the Magistrate Judge.**

Defendant López–Díaz [2] generally claims the agents in this case failed to inform the undersigned that they knew about defendant 2's lack of knowledge, lack of any evidence of his participation, lack of evidence of financial or other benefit from the alleged activities of his brother. (Docket No. 101, pp. 7–9). In turn the government claims all the facts were provided to this Magistrate Judge at the time the search warrant was sought. (Docket No. 116, p. 7).

Regardless of the good-faith exception[4] and determination of probable cause, one must also deal with an alternate situation when the affidavit upon which a warrant is authorized contains omissions or misleading statements that would have affected the judicial officer's determination in granting same.

This is not the situation in this case. As a matter of fact, the arguments made to this effect by defendant 2 are general and conclusory in nature without any specificity to the alleged facts in dispute which the

---

**4.** Application of the good-faith exception will be discussed in detail further below.

agents allegedly omitted. Moreover, defendant 2 has not alleged in his motion to suppress the federal agents lied or that there are any deliberate inconsistencies or misleading statements.

■ Notwithstanding defendant 2's contention, the Court of Appeals for the First Circuit in *United States v. Nelson–Rodríguez*, 319 F.3d 12 (1st Cir.2003), which dealt with suppression as to a Title III supporting affidavit, indicated that where an affidavit also included large quantities of evidence from other sources, as in this case, the omission alleged therein would not be a basis for suppression. The Court of Appeals indicated therein the technique used in *United States v. Young*, 877 F.2d 1099 (1st Cir.1989) should be followed to determine that if all misleading statements from the affidavit were excised—or included—there would still be more than adequate showing of probable cause.

Evidently, this is not a case where an officer's lawful search was a pretext for otherwise unlawful aspects of a search, indiscriminate criminal fishing, for it was predicated on a particular offense being investigated, a particular property being searched, and as above discussed, particularized evidence of the commission of said offense was sought as part of an investigation which includes multiple sources of information.

■ In view of the above, defendant López–Díaz [2]'s conclusory assertion, without more, that the agents failed to inform this Magistrate Judge of his knowledge, lack of participation and/or financial profit is unfounded and inconsequential.

## C. No Hearing is Required.

Defendant López–Díaz [2] requests a hearing claiming it is necessary in this case because there are factual issues in doubt or dispute which cannot be resolved on a paper record. (Docket No. 101, p. 10). In turn, the government contends defendant has not met the threshold to establish he is entitled to said hearing. (Docket No. 116, pp. 7–8).

A criminal defendant does not have a presumptive right to an evidentiary hearing on a motion to suppress. *United States v. D'Andrea*, 648 F.3d 1 (1st Cir. 2011); *United States v. Brown*, 621 F.3d 48, 57 (1st Cir.2010) (citing *United States v. Panitz*, 907 F.2d 1267, 1273 (1st Cir. 1990)). "A hearing is required only if the movant makes a sufficient threshold showing that material facts are in doubt or dispute, and that such facts cannot reliably be resolved on a paper record. . . . Most importantly, the defendant must show that there are factual disputes which, if resolved in his favor, would entitle him to the requested relief." *United States v. D'Andrea*, 648 F.3d at 1; *United States v. Staula*, 80 F.3d 596, 603 (1st Cir.1996) (citations omitted).

"[W]here the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause, the Fourth Amendment requires that a hearing be held at the defendant's request." *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978).

"[T]o mandate an evidentiary hearing the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof". *Franks v. Delaware*, 438 U.S. at 154, 98 S.Ct. 2674,

*see also United States v. Grant,* 218 F.3d 72 (1st Cir.2000).

A review of defendant 2's motion to suppress shows it does not contain any such allegations of deliberate falsehood or of reckless disregard for the truth. Thus, defendant López–Díaz [2] has not met the required threshold to establish entitlement for such a hearing.

### D. Good Faith Exception.

Still, insofar as to the arguments raised by defendant López–Díaz [2] in support of the challenge to the search warrant issued for the home and home offices at Urb. Baldrich entitled the agents to a good faith exception as to the search of the premises, there is sufficient indication of probable cause to obtain same as above discussed.

Even if such omissions were present, matter we deny, the evidence should be considered and allowed under the good-faith doctrine presented under *United States v. Leon,* 468 U.S. 897, 920–921, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984) (the "exclusionary rule does not obtain ... where an objectively reasonable law enforcement officer relied in good faith on a defective warrant because suppression in that instance would serve no deterrent purpose.")

Under *Leon,* the good faith exception applies when government agents rely on a warrant in objective good faith and in the interest of justice suppression is generally inappropriate. *See United States v. Brunette,* 256 F.3d 14, 19 (1st Cir.2001). We find that to be the case here.

Although the good faith exception applies in some cases, it is inapplicable in certain circumstances. The *Leon* good faith exception does not apply where an officer's good faith reliance on a warrant was "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or a warrant that is "so facially deficient—*i.e.* in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume it to be valid.'" *United States v. Owens,* 167 F.3d 739, 745 (1st Cir.1999) (quoting *Leon,* 468 U.S. at 923, 104 S.Ct. 3405). The circumstances to make the good faith exception inapplicable to this case are lacking here.

The facts herein and the analysis above, however, demonstrate the search warrant was issued with probable cause. The agents also reasonably presumed the warrant to be valid. As such, the agents would be entitled, if the warrant had been considered deficient, to a good faith exception as to the search of defendant 2's home and home offices at Urb. Baldrich.

### CONCLUSION

In view of the above discussed, it is recommended that defendant López–Díaz [2]'s Motion to Suppress (Docket No. 101) be **DENIED.**

IT IS SO RECOMMENDED.

The parties have fourteen (14) days to file any objections to this report and recommendation. Amended Fed. R. Crim. P. 59(b)(2). See also Amended Local Rules. Failure to file same within the specified time waives the right to appeal this order. *Henley Drilling Co. v. McGee,* 36 F.3d 143, 150–151 (1st Cir.1994); *United States v. Valencia,* 792 F.2d 4 (1st Cir.1986). See *Paterson–Leitch Co. v. Mass. Mun. Wholesale Elec. Co.,* 840 F.2d 985, 991 (1st Cir. 1988) ("Systemic efficiencies would be frustrated and the magistrate's role reduced to that a mere dress rehearser if a party were allowed to feint and weave at the initial hearing, and save its knockout punch for the second round").

IT SO ORDERED.